

DA 09-0649

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 140

DAVID GOETTEL,

      Plaintiff and Appellant,

  v.

THE ESTATE OF AMBROSE D. BALLARD,
ADELE KRANTZ, as Personal Representative,
and JOHN DOES 1-10,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 2007-196A
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Gary M. Zadick, Ugrin, Alexander, Zadick & Higgins, P.C.,
Great Falls, Montana

      For Appellees:

            Robert J. Phillips, Amy O. Duerk, Phillips Law Firm, P.C.,
Missoula, Montana

Submitted on Briefs:  April 21, 2010

Decided:  June 23, 2010

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     David Goettel appeals an order of the District Court for the Eleventh Judicial District, Flathead County, granting a motion for summary judgment filed by the Estate of Ambrose Ballard (the Estate). We reverse and remand for further proceedings consistent with this Opinion.

¶2     Goettel raises the following issue on appeal: Whether the District Court erred in granting the Estate's motion for summary judgment.

## Factual and Procedural Background

¶3     Goettel and Ballard were involved in an automobile collision on May 14, 2006. The collision occurred when Ballard attempted to make a left turn in front of the oncoming vehicle operated by Goettel. Both men sustained serious injuries. Ballard died of his injuries a few days after the accident. Ballard had a liability policy through Progressive Casualty Insurance Company (Casualty), while Goettel was insured by Progressive Northwestern Insurance Company (Northwestern).

¶4     Goettel did not file a claim against the Estate within one year of Ballard's death as provided in § 72-3-803, MCA. Sometime later, however, Goettel petitioned the District Court to reopen the Estate. Goettel acknowledged in his petition that his failure to file a claim within one year precluded any recovery against the assets of the Estate. Instead, he expressed his intention to pursue claims against Ballard's liability insurance policy as well as the underinsured motorist coverage in his own insurance policy. The District Court granted his petition.

2

¶5     On March 16, 2007, Goettel filed his Complaint and Demand for Jury Trial wherein he brought claims against the Estate for Ballard's alleged negligence and negligence per se.  Goettel eventually amended his complaint to include a claim for underinsured motorist benefits and a claim for declaratory relief against Ballard's insurance carrier requesting advance payment of medical expenses and wage-loss benefits.

¶6     The per person limit of Ballard's policy with Casualty was $300,000.  Casualty initially paid Goettel $73,765.54 in advance for Goettel's medical expenses and wage loss.  In a letter dated May 5, 2008, Goettel's counsel offered to settle the claim for the remainder of the $300,000, but Casualty rejected this offer and, instead, made a counteroffer for a total amount of $180,000.  By letter dated July 2, 2008, Goettel's counsel advised the Estate and Casualty that settlement discussions had terminated.  However, after receipt of new medical information and an in-person meeting with Goettel, Casualty authorized payment of the remaining $226,234.46.

¶7     The balance of the policy limits was offered to Goettel's counsel on August 4, 2008.  In a letter dated August 14, 2008, Goettel rejected the offer to settle this matter for the policy limits.  In spite of that rejection, a check for $226,234.46 was issued and paid to Goettel and his attorney of record on August 26, 2008.  Goettel cashed the check without signing a release.

¶8     On October 6, 2008, the District Court granted Casualty's uncontested motion to dismiss it from this action.  Thereafter, the Estate moved for summary judgment on the basis that because Goettel failed to pursue a claim against the Estate in a timely manner,

3

the Estate's assets were not at risk. The District Court granted the Estate's motion by order dated April 29, 2009.

¶9    Northwestern eventually paid Goettel the policy limits of its underinsured motorist coverage and it was dismissed from the suit without prejudice pursuant to a stipulation dated November 25, 2009. Upon the dismissal of Northwestern, all claims in the matter were final and the case became appealable. Goettel now appeals the District Court's order granting the Estate's Motion for Summary Judgment.

**Standard of Review**

¶10    This Court reviews a District Court's order granting summary judgment de novo. *Waters v. Blagg*, 2008 MT 451, ¶ 8, 348 Mont. 48, 202 P.3d 110 (citing *Bowyer v. Loftus*, 2008 MT 332, ¶ 6, 346 Mont. 182, 194 P.3d 92). Applying the criteria contained in M. R. Civ. P. 56, we determine whether the moving party has established both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Watson v. Dundas*, 2006 MT 104, ¶ 16, 332 Mont. 164, 136 P.3d 973 (citing *Grimsrud v. Hagel*, 2005 MT 194, ¶ 14, 328 Mont. 142, 119 P.3d 47).

¶11    In addition, we review a district court's findings of fact to determine if they are clearly erroneous. *Watson*, ¶ 17 (citing *Ramsey v. Yellowstone Neurosurgical Assocs.*, 2005 MT 317, ¶ 13, 329 Mont. 489, 125 P.3d 1091). And, we review a district court's conclusions of law for correctness. *Watson*, ¶ 17 (citing *Galassi v. Lincoln County Bd. of Com'rs*, 2003 MT 319, ¶ 7, 318 Mont. 288, 80 P.3d 84).

**Discussion**

4

¶12    *Whether the District Court erred in granting the Estate's motion for summary judgment.*

¶13    Goettel argues that the District Court erred when it granted summary judgment to the Estate and stopped the litigation, because it prevented Goettel from establishing the measure of his damages at trial. He maintains that he should be allowed access to the courts in order to establish Casualty's responsibility to pay an excess judgment based upon Casualty's breach of its common law and statutory duties.

¶14    Goettel asserts that granting summary judgment in favor of the Estate and dismissing the Estate from this action protected Casualty from the consequences of failing to pay the policy limits within the time demanded. Goettel also asserts that Casualty's subsequent payment of the policy limits should not have ended the suit since Casualty's failure to pay the policy limits in a timely manner "may have waived or opened up the limits."

¶15    The Estate responds that because Goettel failed to present a claim against it within one year, he lost his opportunity to prove the Estate's liability except to the extent that it is protected by insurance. The Estate asserts that Goettel may not maintain a claim against it because Goettel has already recovered the "limits of the insurance protection" available to him under § 72-3-803(3)(b), MCA, thus the limits of insurance available to protect the Estate have been exhausted.

¶16    Section 72-3-803, MCA, the nonclaim statute, provides in pertinent part:

> **Nonclaim -- limitations on presentation of claims -- exceptions.**
> (1) All claims against a decedent's estate that arose before the death of the decedent, including claims of the state and any subdivision of the state, whether due or to become due, absolute or contingent, liquidated or

5

unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent unless presented within the earlier of the following time limitations:

(a) within 1 year after the decedent's death . . . .

However, § 72-3-803, MCA, further provides:

(3) This section does not affect or prevent:

. . .

(b) to the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which the decedent or the personal representative is protected by liability insurance . . . .

¶17 Goettel acknowledges that he cannot collect any portion of a judgment from the Estate because he did not file a claim against the Estate within the one-year statutory time period for filing claims as provided in § 72-3-803(1)(a), MCA. However, he argues that this statute does not alter the duties of insurers, and the penalty imposed against insurers for failing to attempt to effectuate a prompt and reasonable settlement when liability is reasonably clear under Montana's Unfair Trade Practices Act, specifically § 33-18-201, MCA, or under the common law.

¶18 Goettel maintains that, in this case, Casualty is using § 72-3-803, MCA, as a shield to prevent an excess judgment from being established and to prevent Goettel from claiming recovery from Casualty beyond its contractual limits. Goettel points out that he never signed a release in exchange for payment of the balance of the liability policy. No release was given nor other verbal or written agreement entered into whereby Goettel agreed to abandon prosecution of this action or release Casualty from any common law or statutory bad faith claim for Casualty's failure to settle for policy limits when the liability

6

of Casualty's insured was reasonably clear.  Goettel asserts, and we agree, that § 72-3-803, MCA, was never intended to protect insurers against excess claims or the insurer's own excess exposure.

¶19    In *Gibson v. Western Fire Ins. Co.*, 210 Mont. 267, 682 P.2d 725 (1984), we recognized that insurers owe duties to third-party claimants that may subject the insurer to excess liability.  We stated in that case:

> It is now fairly established in American jurisprudence that an insurer which in bad faith fails to settle a bona fide third party liability claim against its insured, within policy coverage limits, takes the risk of a judgment by the trier of fact in excess of the coverage limits.  The effect of such bad faith is to open the policy coverage limits to the extent of the trial result.

*Gibson*, 210 Mont. at 274, 682 P.2d at 730.  We further stated in *Gibson* that

> [t]he duty to accept a reasonable offer within policy coverage limits arises from an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.  One of the usual benefits of a liability insurance policy is the settlement of claims without litigation, or at least without trial if the cause is litigated.  The implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case, although the express terms of the policy do not impose the duty.

*Gibson*, 210 Mont. at 275, 682 P.2d at 730.

¶20    There are no cases in Montana that interpret the phrase in § 72-3-803(3)(b), MCA, "to the limits of the insurance protection only."  Nevertheless, we conclude that this phrase should be read in the context of a liability insurer's waiver of limits or its responsibility for an excess judgment.  In this Court's decisions in *Watters v. Guaranty Nat. Ins. Co.*, 2000 MT 150, 300 Mont. 91, 3 P.3d 626, and *Shilhanek v. D-2 Trucking,*

7

*Inc.*, 2003 MT 122, 315 Mont. 519, 70 P.3d 721, we concluded that the failure of an insurer to pay the policy limits could result in the limits being waived or opened up.

¶21    *Watters* involved a motor vehicle accident in which the third-party claimants, the Watters, suffered injuries in excess of the insured's policy limits of $50,000. However, the insurance company refused to pay the policy limits without a full and final liability release. The Watters filed suit for personal injuries against the insured who admitted fault for the accident. The insurance company continued to refuse to pay the policy limits without a release. *Watters*, ¶¶ 5-12.

¶22    The Watters then filed suit against the insurance company alleging breach of Montana's Unfair Trade Practices Act (the UTPA) under §§ 33-18-201(6) and (13), MCA. The Watters subsequently filed a motion for summary judgment in that action. Almost a year and a half after the accident, the insurance company paid the policy limits to the court. Two months later, the Watters, who asserted that they were in financial need due to medical creditor claims, executed a full and final liability release in favor of the insured while reserving any and all claims against the insurance company. Thereafter, the parties signed a stipulation distributing the policy limits plus interest to the Watters. *Watters*, ¶¶ 13-17.

¶23    The District Court granted the Watters motion for summary judgment on their claim against the insurance company stating that the insurance company had engaged in unfair claims settlement practices in violation of the UTPA for failing to release the funds in this case. The court also entered judgment against the insurance company and in favor of the Watters for $110,000 in damages. *Watters*, ¶¶ 18-19.

¶24    On appeal, this Court pointed out that § 33-18-201(6), MCA, provides that no insurer may "neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." *Watters*, ¶ 31. In addition, we stated in Watters, that "compelling an innocent third-party claimant . . . to proceed to trial to recoup that which is already owed is entirely inconsistent with the declared public policy of Montana to encourage settlement and avoid unnecessary litigation." *Watters*, ¶ 57 (citing *Augustine v. Simonson*, 283 Mont. 259, 266, 940 P.2d 116, 120 (1997).

¶25    Similarly, in *Shilhanek*, another case involving a motor vehicle accident, we held that when liability is reasonably clear and damages exceed the amount of the policy limits, an insurer breaches its obligation when it rejects a demand to pay policy limits. In such a case, the insurer may become obligated for the excess. *Shilhanek*, ¶¶ 16, 19.

¶26    We conclude here that § 72-3-803(3)(b), MCA, is an exception to §72-3-803(1)(a), MCA, the nonclaim statute, and as such, § 72-3-803(3)(b), MCA, would allow a claim against an estate to continue for the purpose of determining dollar damages. No harm would result to the Estate in this case by continuing the litigation since it has been and is being defended by Casualty, the liability insurer. *See Matter of Estate of Daigle*, 634 P.2d 71, 78 (Colo. 1981) (holding that the estate was not adversely affected by continuing the claim because recovery was of insurance proceeds).

¶27    While § 72-3-803(3)(b), MCA, refers to "the limits of the insurance protection only," those limits may be waived by an insurer under certain circumstances. Moreover, it is clear that an insurer may, in those circumstances, be liable for an excess judgment.

9

The District Court's decision in this case wrongly concludes that since Casualty paid the policy limits of Ballard's policy, Casualty cannot be liable for an excess judgment.

¶28   Accordingly, we reverse the decision of the District Court granting summary judgment to the Estate.  We remand to the District Court to allow this action to proceed to trial to establish the amount of Goettel's damages.

¶29   Reversed and remanded for further proceedings consistent with this Opinion.


/S/ JAMES C. NELSON


We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS