FILED

May 26 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0332

DA 14-0332

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 141

AMY LOCKE,

      Plaintiff and Appellee,

   v.

ESTATE OF MARIAN DAVIS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. DV 12-624A
                Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Paul N. Tranel, Katie C. Guffin, Bohyer, Erickson, Beudette & Tranel, PC,
            Missoula, Montana

      For Appellee:

            Daniel B. Bidegaray, Bert J. Certain, Bidegaray Law Firm, LLC, Bozeman,
            Montana

      For Intervenor:

            Brooke B. Murphy, Adrianna Potts, Matovich, Keller & Murphy, P.C.,
            Billings, Montana

                      Submitted on Briefs:  February 18, 2015
                                  Decided:  May 26, 2015

Filed:

_____
                      Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 This case arises out of a motor vehicle accident that occurred in May 2011, in Three Forks, Montana. Marian Davis lost control of her vehicle and struck the vehicle driven by Amy Locke. Davis suffered fatal injuries in the collision and died several hours later. Locke also sustained injuries as well as post-traumatic stress disorder.

¶2 At the time of the accident, Davis was insured by Safeco Insurance Company under a policy with a $100,000 per person coverage. In August 2012, Locke filed a claim for damages against Davis's estate in the Eighteenth Judicial District Court. Prior to trial, Safeco paid Locke $16,306.40 for her past medical expenses. Following a three-day trial conducted in February 2014 and addressing damages only, the jury returned a verdict awarding Locke $400,000 in compensation for her injuries and the District Court awarded her approximately $1,800 in costs. The Estate sought amendment of or relief from the judgment. The District Court denied the motion. The Estate appeals. Safeco intervenes. We affirm in part and vacate and remand in part.

## ISSUES

¶3 The Estate presents the following restated issue:

¶4 Did the District Court abuse its discretion in denying the Estate's motion to alter or amend the judgment?

¶5 Safeco, as intervenor, presents the following issue:

¶6 Did the District Court abuse its discretion when it made findings and conclusions that effectively bind Safeco to a judgment in a case in which Safeco was not a named party, was not represented by counsel, and did not appear?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 On May 26, 2011, at approximately 6:15 p.m., Marian Davis was driving south on Main Street, heading into Three Forks. Amy Locke was driving north on the same road. Davis lost control of her car and traveled into the oncoming lane, striking Locke's vehicle. Both vehicles came to rest on the side of the road in a gravel lot. Davis sustained life threatening injuries and died later that night. Locke suffered multiple physical and emotional injuries. In July 2011, the Estate of Marian Davis (Estate) was opened. As required under § 72-3-801, MCA, notice to creditors was published notifying all persons with claims against Davis to present their claims within four months of publication of notice.

¶8 In August 2012, Locke filed a complaint against the Estate alleging negligence and negligence per se on the part of Davis. In October 2012, she filed a Statement of Damages in which she described her injuries including a broken left hand and soft tissue injuries to her thoracic, cervical, and left shoulder areas. She also claimed that she suffered from anxiety, depression, irritability, and insomnia as a result of the accident. She asserted damages in excess of $250,000. Safeco paid Locke the sum of $16,306.40 for medical expenses. Prior to trial and on more than one occasion, Locke offered to settle her claim against the Estate within the Safeco policy limits but Safeco rejected her offers.

3

¶9     The District Court conducted a jury trial on February 25–27, 2014.  The Estate admitted Davis's liability for causing the accident; therefore, the case was tried solely on damages.  At the conclusion of the trial, the jury awarded $400,000 plus interest to Locke for damages suffered as a result of the accident.  Judgment was entered on the same day and the court awarded Locke $1,825.18 in costs.

¶10    On March 24, 2014, the Estate filed a motion to alter or amend the judgment under M. R. Civ. P. 59(e), or alternatively for relief from the judgment under M. R. Civ. P. 60(b)(6).  It argued that the judgment should be reduced to $100,000, *i.e.*, the limit of Davis's auto liability policy.  The Estate asserted that under § 72-3-803, MCA, any claim arising from the accident and seeking damages in excess of the limits of Davis's insurance protection must be presented within four months of the publishing of the  Notice to Creditors or within one year of Davis's death, or it is barred.  The Estate noted that Locke did not file her complaint until August 2012, more than fifteen months after Davis's death and over one year after the Notice to Creditors was published.  It claimed, therefore, that Locke could enforce the judgment against the Estate "to the limits of the insurance protection only."  The Estate also contended that the $16,306.40 Locke received in advance payments for past medical expenses should be credited against the $100,000 limit thus entitling Locke to the remaining balance of $83,693.60 only.  The Estate also argued that Locke was prohibited from collecting a judgment against Safeco because Safeco was not a party to the action.  Locke opposed the motion.

¶11    On April 30, 2014, the District Court denied the Estate's motion. Relying on *Goettel v. Estate of Ballard*, 2010 MT 140, 356 Mont. 527, 234 P.3d 99, the court reasoned that (1)

4

Locke had offered on several occasions to settle her claim within the available policy limits and to release the Estate and Safeco; (2) Safeco rejected the offers and forced Locke to trial; (3) Locke obtained a $400,000 jury verdict; and (4) Safeco continued to refuse to pay the remaining liability policy limits. The court declined to reduce the amount of the judgment. The court also noted that under *Goettel*, § 72-3-803, MCA, does not protect a liability insurer from an excess judgment and that Safeco waived the policy limits when it rejected Locke's offers to settle.

¶12    In May 2014, the Estate appealed the court's April 30 order. Subsequently, we granted Safeco's motion to intervene. We affirm in part and vacate in part the District Court's April order and remand for proceedings in accordance with this Opinion.

## STANDARD OF REVIEW

¶13    We review a district court's denial of a motion pursuant to M. R. Civ. P. 59 for an abuse of discretion. *In re Marriage of Anderson*, 2013 MT 238, ¶ 13, 371 Mont. 321, 307 P.3d 313.

¶14    We review a district court's ruling on a motion pursuant to M. R. Civ. P. 60(b) based upon the nature of the final judgment, order, or proceeding from which relief is sought and the specific basis of the motion. Generally, we review the district court's ruling for an abuse of discretion. Exceptions to the general rule include motions made under Rule 60(b)(2), (b)(4), or where relief from a default judgment is sought. Given the facts of this case, the abuse of discretion standard applies. *Orcutt v. Orcutt*, 2011 MT 107, ¶ 5, 360 Mont. 353, 253 P.3d 884 (internal citations omitted).

5

¶15 A district court's interpretation of a statute is a conclusion of law which we review for correctness. *Mont. State Fund v. Simms*, 2012 MT 22, ¶ 15, 364 Mont. 14, 270 P.3d 64.

## DISCUSSION

¶16 *Did the District Court abuse its discretion in denying the Estate's motion to alter or amend the judgment?*

¶17 The Estate does not dispute that Locke is entitled to the $100,000 insurance policy limit. It argues that the District Court failed to apply the plain language of § 72-3-803(3)(b), MCA, when it allowed the entire judgment of $401,825.18, inclusive of costs and plus interest, to stand against the Estate rather than reducing the judgment to the $100,000 auto liability policy limit. The Estate further claims that the advance medical payments of $16,306.40 and any costs and interest must be subsumed within the policy limits.

¶18 Title 72, Chapter 3, Part 8 of the MCA addresses, among other things, a creditor's claims against an estate. Section 72-3-801(1), MCA, provides:

> Unless notice has already been given under this section, a personal representative upon appointment shall publish a notice once a week for 3 successive weeks in a newspaper of general circulation in the county announcing the personal representative's appointment and address and notifying creditors of the estate to present their claims within 4 months after the date of the first publication of the notice or be forever barred.

> Section 72-3-803, MCA, provides in relevant part:

> (1) All claims against a decedent's estate that arose before the death of the decedent . . . are barred against the estate, the personal representative, and the heirs and devisees of the decedent unless presented within the earlier of the following time limitations:
> (a) within 1 year after the decedent's death; or
> (b) within the time provided . . . in 72-3-801(1) for all creditors barred by publication. . . .
> . . . .

6

(3)  This section does not affect or prevent:

.   .   .

(b)  to the limits of the insurance protection only, any proceeding to establish liability of the decedent or the personal representative for which the decedent or the personal representative is protected by liability insurance;

.   .   .

¶19     Whereas §§ 72-3-801(1) and 72-3-803(1), MCA, require a claimant to bring a claim within four months of publication of notice to creditors or not later than one year after the decedent's death, § 72-3-803(3)(b), MCA, allows a late-filing claimant to commence an action against the decedent if the decedent was insured.  Under such circumstances, however, a claimant may not have judgment against an estate in excess of the limits of the liability insurance policy.  Consequently, the Estate is correct that Locke cannot execute *against the Estate* for more than the $100,000 insurance limitation.  Locke concedes this but argues that the full judgment should remain intact because it provides the basis for her to pursue an excess judgment against Safeco, as allowed by *Goettel*.

¶20     In *Goettel*, Goettel and Ballard were involved in an automobile accident caused by Ballard turning in front of Goettel.  Both drivers were seriously injured and Ballard later died from his injuries.  Casualty Insurance Company insured Ballard and Ballard's policy had a $300,000 per person limit.  *Goettel*, ¶¶ 3, 6.  Goettel did not file his claim within one year of Ballard's death but later petitioned the district court to reopen Ballard's estate to enable Goettel to pursue claims against Casualty and to seek uninsured motorist coverage from his own insurer, Progressive Northwestern Insurance Company.  *Goettel*, ¶ 4.  The district court granted Goettel's petition and Goettel filed his complaint.  *Goettel*, ¶¶ 4-5.  Casualty initially paid approximately $74,000 to Goettel for medical expenses and wage loss.  *Goettel*, ¶ 6.

7

¶21 Subsequently, Goettel offered to settle with Casualty for the remainder of the $300,000 policy limits but Casualty rejected the offer and submitted a counteroffer. Goettel declined the counteroffer and indicated in writing that the settlement negotiations were terminated. Shortly thereafter, Casualty issued a check to Goettel for $226,234.46, *i.e.*, the remainder of the policy limits. Goettel accepted the check and cashed it but did not sign a release. *Goettel*, ¶¶ 6-7. The district court then dismissed Casualty from the proceeding and granted the Ballard estate's motion for summary judgment. *Goettel*, ¶ 8. Progressive paid Goettel the policy limits of its uninsured motorist coverage and was also dismissed from the lawsuit. *Goettel*, ¶ 9.

¶22 Goettel appealed the district court's summary judgment ruling in favor of Ballard's estate, arguing that the court prematurely terminated the litigation and prevented Goettel from establishing the measure of his damages at trial. He claimed that he intended to establish that his damages were in excess of the policy limits paid by Casualty and that because Casualty had failed to pay the policy limits in a timely manner, it had "waived" those limits and was liable for the excess damages. *Goettel*, ¶¶ 13-14. Goettel acknowledged that he could not collect any portion of the established excess damages from the Ballard estate because he had not complied with the one-year filing limit in § 72-3-803(1)(a), MCA, but he argued that § 72-3-803, MCA, does not shield insurers against excess claims brought under the Montana Unfair Trade Practices Act. We agreed, citing *Gibson v. Western Fire. Ins. Co.*, 210 Mont. 267, 682 P.2d 725 (1984), that

> an insurer which in bad faith fails to settle a bona fide third party liability claim against its insured, within policy coverage limits, takes the risk of a judgment by the trier of fact in excess of the coverage limits. The effect of

8

such bad faith is to open the policy coverage limits to the extent of the trial result.

*Goettel*, ¶ 19.

¶23    We concluded that "the limits of the insurance protection only" referenced in § 72-3-803(3)(b), MCA, may be waived by an insurer under certain circumstances, rendering the insurer liable for an excess judgment, and that Casualty's eventual payment of the policy limits did not necessarily negate the insurer's liability for an excess judgment. We ordered the district court to allow the action to proceed and to allow Goettel to establish the amounts of his damages. *Goettel*, ¶ 27.

¶24    The Estate challenges the District Court's reliance on *Goettel*. While there are similarities between these two cases, *Goettel* is clearly distinguishable in that Goettel had named the liability insurance carrier, Casualty, as a party defendant in his lawsuit, whereas Locke did not file suit against Safeco. However, insofar as *Goettel* addresses the limits of recovery available against an estate by a claimant who has failed to comply with the one-year filing limit set forth in § 72-3-803(1)(a), MCA, it is instructive.

¶25    In *Goettel*, we concurred with Goettel's concession that because he had failed to present a claim against Ballard's estate within one year of Ballard's death, he could recover against the estate only to the extent that it was protected by insurance. *Goettel*, ¶ 17. Under the applicable statutes, the same result is compelled here. Notwithstanding the amount of the jury's award, Locke is precluded from recovering against the Estate any amount in excess of

9

the limits of the liability policy in the sum of $100,000.[1] However, in light of the possibility that Locke will pursue recovery of the amount of the jury's award in excess of $100,000 against Safeco, and without comment on the merits of that possible claim, we decline to set aside the jury's verdict.

¶26 The Estate also argues on appeal that the District Court abused its discretion when it refused to reduce Locke's $100,000 liability policy recovery against the Estate by the amount of advance medical expense payments Safeco paid to Locke in the sum of $16,306.40. Locke counters that because the jury's award did not apportion any sums to past or future medical expenses, there should be no offset. We disagree. The full limits of liability under the policy were $100,000, and there was no separate coverage available for medical payments. Therefore, the District Court abused its discretion in refusing to reduce the Estate's $100,000 liability to Locke by the amount of the advance payments.

¶27 Accordingly, we vacate the District Court's April 30, 2014 order and remand. Upon remand, the court is directed to issue a new order which will: (1) uphold the jury award of $400,000 and the court's award of costs; (2) expressly provide that Locke is precluded from executing against the Estate for any amount in excess of the $100,000 in insurance proceeds and that the Estate is relieved from any judgment in excess of $100,000; (3) offset the $100,000 insurance limits by the amount of advanced medical payments Locke has received; and (4) preclude Locke from collecting any additional costs, fees, and interest over the $100,000 policy limit from the Estate.

---

[1] This interpretation and application of § 72-3-803(3)(b), MCA, is consistent with that of other jurisdictions with similarly-worded statutes. *See Corlett v. Smith*, 763 P.2d 1172, ¶¶ 10-11 (N.M.

¶28    *Did the District Court abuse its discretion when it made findings and conclusions that effectively binds Safeco to a judgment in a case in which Safeco was not a named party, was not represented by counsel, and did not appear?*

¶29    As noted above, Safeco was not a named party in the action of *Locke v. Estate of Davis*. Nonetheless, in its order denying the Estate's post-trial motions, the District Court concluded that Safeco had refused to settle Locke's claims against the Estate within policy limits and had "forced" her to trial. The court also concluded that even after Locke obtained a jury verdict in the sum of $400,000, Safeco continued to refuse to pay the remaining policy limits. The court concluded that Safeco had opened up the policy limits when it had rejected Locke's offer of settlement, and that, under § 72-3-803(3)(b), MCA, the "limits of the insurance protection only" language of the statute may be waived and require imposition of liability against the insurer for an excess judgment. The court observed that Safeco had demanded that Locke file a notice of satisfaction of judgment for an amount less than the amount of the judgment that she rightfully obtained, before it would pay her the remaining balance of the policy limits. Given these circumstances, the court refused to alter or amend the judgment.

¶30    After the Estate filed its notice of appeal, Safeco sought intervention in the appeal, arguing that the District Court's determination that it had waived its policy limits and could be liable for the excess verdict against the Estate was improper. Safeco argued that it should not be bound by a District Court order and judgment assessing its conduct when it was not a party to the proceedings below and was not represented by counsel. Locke objected to the motion to intervene, but the Estate did not. We granted Safeco's motion.

---

App. 1988), and *Harden v. Allstate Ins. Co.*, 883 F. Supp. 963, 974-75 (D. Del. 1995).

11

¶31 Safeco maintains in its brief on appeal that the District Court erroneously made determinations about Safeco's ostensible misconduct during the underlying proceeding that could subject the insurer to excess judgment liability. Safeco argues that the contents of the court's April Order are not binding on it because the District Court did not have jurisdiction to enter judgment against it as a non-party. It asserts that to the extent the order may be construed as adjudicating an issue that was not before the court, the order should be vacated.

¶32 We agree with Safeco. Safeco was not a party to the trial proceeding. There is accordingly no record establishing the grounds for Safeco's refusal to settle within policy limits, establishing that it engaged in misconduct constituting bad faith, or supporting a determination that Safeco has waived its policy limits by virtue of its conduct. The District Court therefore erred in making these findings against Safeco. Accordingly, upon remand, the District Court's revised order shall not include any findings or conclusions regarding Safeco's conduct.

## CONCLUSION

¶33 For the foregoing reasons, we vacate the District Court's April 30, 2014 Order and remand to the District Court for issuance of an amended order in accordance with this Opinion.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JIM RICE
/S/ LAURIE McKINNON