DA 15-0234

FILED

October 6 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0234

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 288

COREY WATTERUD, LISA WATTERUD, Personally
and as parent and general guardian of J.F., E.W.,
and KENDALL WATTERUD,

      Plaintiffs and Appellants,

    v.

JOSHUA GILBRAITH, JANET GILBRAITH,
AMBER UHREN, HOMEFRONT PROPERTY
INSPECTIONS, LLC and STEVE SMITH,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                     In and For the County of Yellowstone, Cause No. DV 14-0850
                     Honorable Ingrid G. Gustafson, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Tucker Gannett, Donald L. Harris, Harris & Associates, PLLC, Billings,
            Montana

      For Appellees:

            Richard E. Gillespie, Keller, Reynolds, Drake, Johnson & Gillespie, P.C.,
            Helena, Montana

                               Submitted on Briefs:  August 26, 2015
                                       Decided:  October 6, 2015

Filed:

_____
                          Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Joshua and Janet Gilbraith hired Amber Uhren as their real estate agent to sell their home in Billings. Two days later, the Gilbraiths entered into a buy-sell agreement with potential buyers Corey and Lisa Watterud. The parties signed several property disclosure statements in which the Gilbraiths disclosed to the Watteruds that the basement of the property had flooded in 2005 but had been redone in 2008, and that no further problems had arisen. The Gilbraiths also disclosed that the home had not been tested or treated for mold. The Gilbraiths did not mention that they had performed the flood remediation work themselves. The disclosures affirmatively stated that seller and seller's agent made no representations or warranties about the presence or absence of mold, and both parties agreed it was the responsibility of the buyers to obtain a mold inspection by a qualified inspector. The Watteruds obtained a home inspection, but chose not to obtain a mold inspection.

¶2 After the sale of the property closed and the Watteruds moved into the home, they became ill and discovered mold growing in the basement. The Watteruds sued the Gilbraiths, Amber Uhren, the home inspection company, and the home inspector for negligence. The Gilbraiths, the home inspection company, and the home inspector were eventually dismissed from the action. The Watteruds maintained that Amber was obligated to discover adverse material facts about the property—including the existence of mold in the basement and details about the remediation efforts undertaken by the Gilbraiths—and to disclose those facts to the Watteruds. Amber filed a motion for

2

summary judgment, arguing that the Watteruds' negligence claim was premised upon inspection and discovery duties that do not exist. The District Court granted Amber's motion for summary judgment. We affirm.

## ISSUE

¶3 We restate the issue on appeal as follows:

¶4 Did the District Court err in granting summary judgment in favor of Amber Uhren because the Watteruds' negligence complaint against her was premised upon alleged duties that do not exist?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 On September 3, 2013, Joshua and Janet Gilbraith retained Amber Uhren as their real estate agent to sell their home at 4109 Murphy Avenue in Billings. That day the parties signed a "Relationships/Consents in Real Estate Transactions" agreement and a "Residential Listing Contract." In the latter, the Gilbraiths disclosed that the property had not been tested for mold and had not received mitigation or treatment for mold.

¶6 On September 5, 2013, Corey and Lisa Watterud entered into a "Buy-Sell Agreement" with the Gilbraiths, and both couples signed an "Owner's Property Disclosure Statement" and a "Mold Disclosure" form. The property disclosure statement required the Gilbraiths to describe any adverse material facts about various features of the property. Under the heading "Basement: (Leakage, Flooding, Moisture, or Evidence of Water, and Fuel Tanks)," the Gilbraiths wrote "back in 2005 issue has been handled & taken care of." The Gilbraiths also checked the box next to "Flooding, draining, grading

3

problems, or French drains," to indicate that those items occurred or existed on the property. On additional lines they wrote, "water damage to carpet and walls sheetrock whole basement redone back in 2008 been fine since." The Gilbraiths had undertaken to repair the water damage themselves instead of hiring professionals, although this fact was not included in the disclosures.

¶7 Above the sellers' signatures on the mold disclosure form is the sentence: "[t]he seller, landlord, seller's agent, buyer's agent, or property manager cannot and does not represent or warrant the absence of mold. It is the buyer's or tenant's obligation to determine whether a mold problem is present. To do so, the buyer or tenant should hire a qualified inspector . . . ." And above the buyers' signatures on the mold disclosure, the form reads "[t]he undersigned Buyer/Tenant agrees that it is their responsibility to hire a qualified inspector to determine if a significant mold problem exists or does not exist on the property." The Watteruds requested various inspections in the buy-sell agreement, including a home inspection, a covenant and easement inspection, and a radon inspection, but they did not request a mold inspection.

¶8 Steve Smith of Homefront Property Inspections, LLC inspected the property. As a result of the inspection, the Watteruds requested and the Gilbraiths agreed to make several repairs, including covering an exposed wire, fixing a broken garage door opener, and painting exposed wood over the basement door. The Watteruds did not request any repairs related to flood damage, restoration, or mold.

¶9 The sale of the property closed on October 16, 2013. After the sale had closed and the Watteruds had moved into the home, the Watteruds became ill and discovered mold growing in the basement of the property. The Watteruds sued the Gilbraiths, Amber Uhren, Homefront Property Inspections, LLC, and Steve Smith for negligence and negligent misrepresentation. The Gilbraiths, Homefront Property Inspections, LLC, and Steve Smith were later dismissed from the action. Amber Uhren attests that she had no personal knowledge about the existence of mold on the property or any repair or treatment efforts undertaken to eradicate the mold. Amber filed a motion for summary judgment, arguing that she had no duty to the Watteruds to discover adverse material facts about the property. The District Court granted Uhren's motion, and the Watteruds filed a timely appeal.

## STANDARD OF REVIEW

¶10 We review summary judgment rulings *de novo*. *Estate of Willson v. Addison*, 2011 MT 179, ¶ 11, 361 Mont. 269, 258 P.3d 410 (citing *Goettel v. Estate of Ballard*, 2010 MT 140, ¶ 10, 356 Mont. 527, 234 P.3d 99). Applying the same M. R. Civ. P. 56 criteria as the district court, we determine whether the moving party has established both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *Estate of Willson*, ¶ 11 (citing *Goettel*, ¶ 10).

# DISCUSSION

¶11 *Did the District Court err in granting summary judgment in favor of Amber Uhren because the Watteruds' negligence complaint against her was premised upon alleged duties that do not exist?*

¶12 The Watteruds argued to the District Court and now on appeal that as the sellers' agent, Amber Uhren owed a duty of care to discover and disclose to them adverse material facts about the property. The Watteruds cite the REALTOR® Code of Ethics and testimony from another realtor in an attempt to establish a common law duty of a seller's agent to discover adverse material facts about a property and disclose those facts to the buyer. However, the Montana Code abolished all common law duties:

> [t]he provisions of this chapter and the duties described in this section govern the relationships between brokers or salespersons and buyers or sellers and are intended to replace the duties of agents as provided elsewhere in state law and replace the common law as applied to these relationships. . . . The duties of a broker or salesperson vary depending upon the relationship with a party to a real estate transaction and are as provided in this section.

Section 37-51-313(1), MCA.

¶13 The duties a seller's agent owes a buyer are now codified:

> [a] seller agent is obligated to the buyer to:
>
> (a) disclose to a buyer or the buyer agent any adverse material facts that concern the property and that are known to the seller agent, except that the seller agent is not required to inspect the property or verify any statements made by the seller; [and]
>
> (b) disclose to a buyer or the buyer agent when the seller agent has no personal knowledge of the veracity of information regarding adverse material facts that concern the property . . . .

6

Section 37-51-313(3), MCA. Nevertheless, the Watteruds contend that the principles of the common law were incorporated into administrative regulations and case law and eventually into the current statute as § 37-51-313(13).[1] Subsection (13) says, "[c]onsistent with the licensee's duties as . . . a seller agent, . . . a licensee shall endeavor to ascertain all pertinent facts concerning each property in any transaction in which the licensee acts so that the licensee may fulfill the obligation to avoid error, exaggeration, misrepresentation, or concealment of pertinent facts." Section 37-51-313(13), MCA. According to the Watteruds, subsection (13) imposes an affirmative duty to discover adverse material facts and subsection (3) imposes a duty to disclose those facts to the buyer. This is the first time we have been asked to interpret these subsections in conjunction.

¶14 In interpreting these subsections, we are guided by canons of statutory construction:

> [i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.

Section 1-2-101, MCA. Also, "[w]ords and phrases used in the statutes of Montana are construed according to the context . . . ." Section 1-2-106, MCA. In this case, we must give effect to subsections (1), (3), and (13) together. Subsection (1) did away with the common law duties of realtors and replaced them with codified duties. Among those

---

[1] The parties discuss § 37-51-313(12) MCA, in their briefs, but the statute was amended in 2015, and the former §§ (10) through (12) were redesignated as (11) through (13).

codified duties are those listed in subsection (3), including the duty to disclose to a buyer any adverse material facts about the property that are known to the seller's agent. This duty is followed by an important limitation: the seller's agent is not required to inspect the property or verify statements made by the seller. However, a seller's agent must disclose when he or she has no personal knowledge of the veracity of statements about the property made by the seller. Consistent with these duties to disclose, but not in addition to or instead of these duties, a seller's agent must "endeavor to ascertain all pertinent facts" concerning the property so as to avoid "error, exaggeration, misrepresentation, or concealment of pertinent facts." Section 37-51-313(13), MCA.

¶15   Read in the context of the preceding subsections, the duty to "endeavor to ascertain all pertinent facts" is not a reinstatement of common law duties or a contradiction of the limitation in subsection (3)(a) that a seller's agent need not inspect the property or verify the seller's statements. Rather, it is a duty to acquire enough information about any adverse material facts concerning the property to fulfill the agent's disclosure obligation under subsection (3)(a). According to the statute then, a seller's agent need not inspect the property herself and need not verify the seller's statements about the property, but she must disclose any adverse material facts about which she is aware (and she must ascertain enough about these facts to avoid error, exaggeration, misrepresentation, or concealment), and she must inform a buyer when she has no personal knowledge of the veracity of the seller's statements.

8

¶16 In this case, Amber Uhren, as the sellers' agent, had a duty to disclose to the Watteruds any adverse material facts concerning the property about which she was aware and a duty to disclose when she had no personal knowledge of the veracity of the Gilbraiths' statements. We analyze this two-part duty as it applies to the mold problem before us. First, Amber has sworn under oath that she was not aware of any adverse material facts concerning mold in the home, nor have the Watteruds claimed that she was. Turning to her second duty, this absence of knowledge regarding the presence of mold was disclosed to the Watteruds in the mold disclosure form which stated that the seller's agent "cannot and does not represent or warrant the absence of mold" and advised that it was the buyer's obligation to determine whether mold was present. Amber thus squarely complied with her statutory duty. Amber had no duty to inspect the property, to independently discover adverse material facts about the property, or to verify the Gilbraiths' statements.

¶17 The existence of a legal duty and the scope of that duty are questions of law. *Willden v. Neumann*, 2008 MT 236, ¶ 14, 344 Mont. 407, 189 P.3d 610 (citing *Webb v. T.D.*, 287 Mont. 68, 72, 951 P.2d 1008, 1011 (1997)). If a defendant owes no duty to a plaintiff, the defendant is entitled to judgment as a matter of law. *Willden*, ¶ 14. The District Court in this case correctly determined that the scope of Amber's duty to the Watteruds is prescribed by § 37-51-313, MCA, and that Amber did not owe the Watteruds a duty to inspect the property or to discover any adverse material facts about it, including the existence of mold or the fact that the Gilbraiths attempted to remediate

9

the water damage in the basement themselves instead of hiring a professional. Amber is entitled to judgment as a matter of law on the question of duty because the Watteruds' negligence claim against her is premised upon inspection and discovery duties that do not exist under the statute setting forth the duties of a seller's agent to a buyer.

**CONCLUSION**

¶18 For the foregoing reasons, we affirm the District Court's October 15, 2014 Order granting Uhren's motion for summary judgment.


/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON