DA 21-0050

FILED

09/14/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0050

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2021 MT 231

IN RE THE PARENTING OF:

P.H.R. and P.H.R.,

    Minor Children,

MARLEN DELANO RUSSELL,

      Petitioner and Appellee,

    and

SARAH PATRICIA RUSSELL,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR-19-902
Honorable Leslie Halligan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Scotti L. Ramberg, Office of the State Public Defender, Missoula, Montana

      For Appellee:

            Lucy Hansen, Hansen Law Practice, PLLC, Missoula, Montana

                Submitted on Briefs:  July 21, 2021

                          Decided:  September 14, 2021

Filed:

                          _____
                                   Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Sarah Willmon (formerly Sarah Patricia Russell) appeals four provisions of a Fourth Judicial District Court order and amended parenting plan requiring her and her current husband to attend family counseling, allowing her ex-husband Marlen Delano Russell to contact the children "regularly," requiring the parties to mediate future disputes, and splitting between the parties the tax dependency deductions. We affirm in part and reverse in part.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2     The parties were divorced by a Texas court decree in January 2015. The Texas parenting plan appointed Sarah as the sole managing conservator for their two minor children. It included alternate plans in case of one parent's relocation to a residence "more than 100 miles" from the other parent. Sarah and the parties' children moved to Montana in July 2016. Marlen remained in Texas.

¶3     In December 2019, Marlen registered the parties' divorce decree and parenting plan in Montana's Fourth Judicial District Court. Among other filings, Marlen in February 2020 filed a motion to amend the existing parenting plan and a proposed amended parenting plan. He requested primary custody of the children, arguing that there was a substantial change in circumstances warranting modification of the plan, including the children's move to Montana, the children's decline in reported wellbeing, Sarah's alleged neglect of the children, Sarah's new husband who Marlen alleges is abusive, and the children's new ages, needs, and interests. He also included in the proposed amended parenting plan a provision that "[t]he parties shall alternate claiming the children on their tax returns every

2

tax year" and a communication provision stating that the parents' phone calls with the children "shall be unrestricted but on a reasonable basis." Sarah responded that many of Marlen's allegations were false and lacked evidentiary support, and that there were not changed circumstances sufficient to allow amendment of the parenting plan. She also indicated she would be willing to participate in mediation regarding the parenting plan amendment "given certain protective measures are taken due to the history of domestic violence" between the parties.

¶4 The District Court ordered the parties to engage in mediation prior to any further hearing on the motion, and the parties did so in May 2020 via Zoom. As a result of the mediation the parties entered into a stipulation concerning various matters, including Marlen's communication with the children. The stipulation provided: "Father shall call P.R. (daughter) on her cell phone rather than through Mother's phone. Father shall be entitled to phone calls with P.R. (son) through Mother's phone on Monday[,] Wednesday[,] and Friday at 7:25 p.m. and shall cease calling Mother's phone at other times." The parties then filed their stipulation with the District Court.

¶5 In September 2020, the District Court held a hearing on the remaining issues under Marlen's motion. Both parties testified, as did a therapist who had seen the parties' daughter on a few occasions. The District Court interviewed the parties' children in chambers following the hearing. It also had access to Department of Family Services records and the parties' Texas court file.

¶6 The court issued its Order and Amended Parenting Plan in December 2020. It granted Marlen's motion in part, agreeing with Marlen that, among other things, Sarah and

3

the children's move to Montana constituted changed circumstances that supported adopting some amendments to the parenting plan. The court concluded, however, that Sarah would remain primary parent and the parenting schedule would remain the same. Relevant to this appeal, the court's order and amended parenting plan include provisions that require Sarah and her husband to attend family counseling, allow the absent parent to contact the children "regularly," require the parties to mediate future disputes, and split between the parties the tax dependency deductions.

## STANDARD OF REVIEW

¶7 We review a district court's conclusions of law de novo. *Giambra v. Kelsey*, 2007 MT 158, ¶ 28, 338 Mont. 19, 162 P.3d 134 (citations omitted). We review for clear error a district court's findings in support of its decision to modify a parenting plan. *Guffin v. Plaisted-Harman*, 2010 MT 100, ¶ 20, 356 Mont. 218, 232 P.3d 888 (citing *In re Marriage of Oehlke*, 2002 MT 79, ¶ 9, 309 Mont. 254, 46 P.3d 49). "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence or if, upon reviewing the record, this Court is left with the definite and firm conviction that the district court made a mistake." *In re S. T.*, 2008 MT 19, ¶ 8, 341 Mont. 176, 176 P.3d 1054 (citation omitted).

¶8 "[A] district court's decision will not be disturbed on appeal unless there is a mistake of law or a finding of fact not supported by substantial credible evidence that would amount to a clear abuse of discretion." *Guffin*, ¶ 20 (citations and internal quotation marks omitted); *In re Marriage of D'Alton*, 2009 MT 184, ¶ 7, 351 Mont. 51, 209 P.3d 251 (citation omitted). This Court reviews a district court's award of a tax exemption for an

4

abuse of discretion. *In re Marriage of Foreman*, 1999 MT 89, ¶ 41, 294 Mont. 181, 979 P.2d 193 (citing *In re Marriage of Schnell*, 273 Mont. 466, 471, 905 P.2d 144, 147 (1995)). A court has abused its discretion if it "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Guffin*, ¶ 20 (citation omitted).

## DISCUSSION

¶9     *1. Whether the District Court erred when it ordered Sarah's husband to engage in family counseling.*

¶10     Related to its concern that no caregiver should use corporal punishment on the children and in order "[t]o establish other appropriate interventions and issues regarding the parenting of children in a blended family," the District Court ordered that "Sarah shall engage in family counseling with her current husband." Sarah argues that the District Court erroneously included her husband in this order because he is not a party to the case and thus is not subject to the court's jurisdiction. Marlen responds that the District Court's inclusion of Sarah's husband was a proper exercise of its discretion and authority to ensure the children's physical and emotional health and well-being because her husband is "a man she agreed to add into her household and a man who she has allowed to discipline the children." Marlen agrees that Sarah's husband cannot be held in contempt for failing to attend counseling but argues that Sarah "has been tasked with ensuring that other adult members of her household are safe around the children."

¶11     A court may exercise power over or compel the action of only those parties under the court's jurisdiction. *Reed v. Woodmen of the World*, 94 Mont. 374, 381–82,

5

22 P.2d 819, 821 (1933); *Locke v. Estate of Davis*, 2015 MT 141, ¶ 32, 379 Mont. 256, 350 P.3d 33 (where Safeco was not a named party, was not represented by counsel, and did not appear before the district court, the court erred in making findings against it).  A person becomes a party to an action through her or his voluntary appearance before the court or through legal service of summons.  M. R. Civ. P. 4(b)(2); *Deich v. Deich*, 136 Mont. 566, 577, 323 P.2d 35, 41 (1958) (citation omitted).

¶12    Although the District Court has discretion in fashioning appropriate provisions for the best interests of the children, it erred to the extent it included Sarah's current husband in its order to attend family counseling.  Sarah's husband is not a party to this case, nor did he at any time voluntarily submit himself to the jurisdiction of the District Court.  Montana courts do not have the authority to order a non-party to engage in conduct, nor can they enforce such an order.  Further, Sarah cannot be held in contempt if her husband fails to comply with the order.  We accordingly reverse that provision of the District Court's order requiring Sarah's current husband to attend family counseling.

¶13    *2. Whether the District Court abused its discretion when it ordered that the absent parent may contact the children "regularly."*

¶14    After a court has determined that changed circumstances exist sufficient to allow amendment of a parenting plan, it may amend such a parenting plan only if the amendment "is necessary to serve the best interest of the child."  Section 40-4-219(1), MCA; *Jacobsen v. Thomas*, 2006 MT 212, ¶ 16, 333 Mont. 323, 142 P.3d 859.  Sections 40-4-212(1) and -219(1), MCA, provide a non-inclusive list of eighteen factors to be considered when analyzing the best interests of the children.  Such factors include:

6

whether "one parent has willfully and consistently: (i) refused to allow the child to have any contact with the other parent; or (ii) attempted to frustrate or deny contact with the child by the other parent"; and "whether the child has frequent and continuing contact with both parents, which is considered to be in the child's best interests unless the court determines, after a hearing, that contact with a parent would be detrimental to the child's best interests[.]" Sections 40-4-212(1), -219(1), MCA.

¶15    In considering the factors for the children's best interests, the court found that "Marlen accuses Sarah of frustrating his ability to talk to the children, but the [c]ourt finds these accusations without merit. Marlen's communication expectations are, for the most part, unreasonable given the children and Sarah's schedules. She has reasonably accommodated his requests." The District Court ultimately ordered in the amended parenting plan: "The non-parenting parent shall have the opportunity to Skype, FaceTime, or call the children regularly. Additionally, the children shall have the right at any time to contact or communicate with the absent parent."

¶16    Sarah argues that the District Court erred by allowing Marlen to communicate "regularly" in contradiction of the parties' mediated stipulation regarding communication, which allows contact only at specified times. She also argues this provision contradicts the District Court's own findings that Marlen's communication expectations have been unreasonable. She contends that any deviation from the parties' stipulation is not in the best interests of the children when Marlen's actions were intended only to harass and assert control over Sarah and "will invite more conflict, not less."

7

¶17 The record supports the District Court's conclusion that Marlen's communication expectations have been unreasonable and that Sarah has not attempted to prevent his communication with the children. For at least five years leading up to the parties' May 2020 mediation, Marlen would typically call Sarah's phone at 7:25 a.m. and 7:25 p.m. seven days per week; if Sarah did not answer, Marlen would call again, leave multiple voicemails, and typically send multiple text messages. Though the parties testified to continued difficulties related to communication even after the May 2020 mediation and resulting stipulation, the record substantiates the District Court's finding that Sarah never unreasonably attempted to frustrate Marlen's communication with the children. "[T]o the extent that the court is able to correctly apply th[e] statutory requirements while, at the same time, holding the parties to their on-record stipulations and written agreements, it should do so." *In re Marriage of Simms*, 264 Mont. 317, 326, 871 P.2d 899, 905 (1994). The District Court did not explain its departure from the parties' stipulation and abused its discretion when it failed to incorporate the stipulation's terms regarding communication with the children. We reverse that provision and remand for modification of the amended parenting plan to incorporate those terms.

¶18 *3. Whether the District Court erred when it ordered future conflicts be subject to mandatory mediation.*

¶19 "The district court may at any time consider the advisability of requiring the parties to a proceeding under this chapter to participate in the mediation of the case." Section 40-4-301(1), MCA; *see also* § 40-4-219(9), MCA. We held in *Hendershott v. Westphal*, however, that a court cannot require mediation in family law cases if it has "reason to

suspect" domestic violence. 2011 MT 73, ¶ 22, 360 Mont. 66, 253 P.3d 806 (quoting § 40-4-301(2), MCA (2009)); *see also* § 40-4-219(9), MCA (2019) (a court may order mediation regarding parenting plan amendments "[e]xcept in cases of physical, sexual, or emotional abuse or threat of physical, sexual, or emotional abuse by one parent against the other parent . . ."). "[T]he basic rules, assumptions, and goals of mediation are undermined in those particular cases when the parties have a history of domestic violence." *Hendershott*, ¶ 26 (citations omitted).

¶20 The District Court expressed "some concerns with abuse at the hands of Marlen given Sarah's accusations of Marlen's physical, verbal, and mental abuse against Sarah and his threats to her upon their divorce, but again the evidence is not conclusive." Presumably because the evidence was not "conclusive," the court included in the amended parenting plan:

> **21. Parenting Mediation.** In the event the parties are unable to resolve an important conflict between them regarding the children, they shall seek the assistance of a neutral third party acceptable to both Marlen and Sarah, and to try to resolve their differences through confidential mediation. The parties shall equally split the cost of such mediation.

¶21 Sarah argues that the District Court erred by ordering the parties to mediate any future conflicts. She contends that the record demonstrates a long history of domestic violence in the parties' relationship and that, "[t]hrough testimony, her filings, and affidavits, it is evident that [Sarah] still fears [Marlen] and there continue to be substantial issues with power and control." She argues that the District Court's noted "concerns" about domestic violence were sufficient to trigger the "reasonable suspicion" standard under

9

§ 40-4-301(2), MCA, and *Hendershott*. Sarah thus contends that the parties should not be required to mediate absent their consent.

¶22 In *Hendershott*, we interpreted § 40-4-301(2), MCA's, "reason to suspect" language as being a "minimal standard." *Hendershott*, ¶ 24 (citation omitted) ("the 'reason to suspect' standard was used because it was lower than probable cause and consistent with doctor and teacher standards for investigating abuse"). There, we struck the final parenting plan's provision requiring mediation for any future disputes where the mother's admissions, a doctor's testimony, and other credible evidence provided a reason to suspect that the parties' relationship was emotionally abusive. *Hendershott*, ¶¶ 29, 32. In response to our interpretation that § 40-4-301(2), MCA, is an "absolute bar" to mediation in such cases, *Hendershott*, ¶¶ 25, 32, the 2013 Legislature amended it to clarify that a court may "authorize or permit continuation of mediated negotiations" only when "each of the parties provides written, informed consent[.]" *See also* § 40-4-301(5), MCA (defining "informed consent" as "an educated, competent, and voluntary choice to enter into mediation").

¶23 The record supports the District Court's finding of "concern" that there may have been a history of domestic violence in the parties' relationship. When her counsel asked what "would have driven [Sarah] to the Crisis Intervention Center in Texas[,]" Sarah responded:

> Being held at gunpoint, being bit on my chest, being held down and crying during sex and begging him to stop, him using pressure points on my hand and my shoulders, him outright telling me that he would live—never leave a mark that would be seen by anybody, him grabbing me by the hair, him holding me between his legs and not letting me up, him constantly talking about an attack dog that he would train to kill anybody on command, him

10

picking up our pets when he would get frustrated and putting his arm—his hands around their neck.

Sarah also testified to her continued feelings of intimidation and harassment by Marlen.

¶24 The District Court's "concern" was enough to satisfy the "reason to suspect" standard under § 40-4-301(2), MCA, and *Hendershott*. We are unpersuaded by Marlen's contention that there was no reason to suspect abuse because Sarah voluntarily participated in the May 2020 mediation, there were no criminal charges or orders of protection against him, and the original parenting plan's terms provided for direct communication between the parties. Contrary to Marlen's assertions, Sarah expressed her concerns about domestic violence in the relationship prior to mediation and stated that she agreed to such mediation only because it took place over Zoom. Despite the absence of "conclusive" evidence that would have been shown by the filing of charges or entry of orders of protection against Marlen, the District Court's own reasonable finding of "concern" regarding abuse is enough to trigger the requirements of the statute.

¶25 The District Court erroneously ignored its own finding when it ordered the parties to mediate future disputes without including a requirement that they each provide "written informed consent." We reverse the mediation provision in the amended parenting plan as written and remand for incorporation of the requirement that the parties may mediate future disputes so long as each party provides "written informed consent," consistent with § 40-4-301(2), MCA.

11

¶26     *4. Whether the District Court erred when it divided the tax dependency deductions between the parties.*

¶27     The District Court in the amended parenting plan included a change in the parties' tax dependency deductions:

> **23.   Tax Exemptions/Deductions/Credits.**   The parents shall each be entitled to claim a child for purposes of their federal and state tax returns.  To simplify this process, Marlen shall claim [the parties' daughter] until he can no longer claim her, and Sarah shall claim [the parties' son].   When [their daughter] can no longer be claimed, then the parties shall alternate claiming [their son] for any available tax exemption, deduction, or credit.  The parties may consult with a tax professional and agree to a different procedure if the tax benefit would result in greater benefit to the parents.

¶28     Sarah argues that the District Court erred by sua sponte ordering a division of the tax dependency deduction because it was "in contradiction of the previous Texas order[] and without testimony, evidence[,] or findings of fact to support [it]."  She contends that federal, Texas,[1] and Montana law allow only the primary custodial parent to claim tax dependency deductions, and thus as the primary custodial parent she was granted both tax dependency deductions under the Texas court order.  She alternatively argues that the District Court's allocations were not supported by any evidence or in the best interests of the children.

¶29     "[T]he general rule under federal law is that the primary custodial parent is entitled to the dependency deduction."  *In re Foreman*, ¶ 42 (citing *In re Marriage of Milesnick*,

---

[1] Sarah cites *In the Interest of A.M.*, No. 04-16-00335-CV, 2017 Tex. App. LEXIS 3203, at *5 (2017), and *Kolb v. Kolb*, 479 S.W.2d 81, 82 (Tex. Civ. App. 1972), arguing that Texas courts have determined they may not allocate tax dependency deductions because such determinations are preempted by federal law.  Because the District Court amended the parenting plan pursuant to Montana law, we need not consider Texas law.

235 Mont. 88, 93–94, 765 P.2d 751, 754–55 (1988)); *see* 26 U.S.C. § 152(e); Admin. R. M. § 42.15.403 (2004). Montana courts, however, have jurisdiction to assign tax dependency deductions in dissolution cases if "the allocations would serve the best interests of the children and the parties." *In re Milesnick*, 235 Mont. at 93–94, 765 P.2d at 754–55 (citations omitted) (concluding that "the 1984 changes [to the federal tax code] were not enacted to strip state courts of the power to allocate dependency exemptions between parties to a dissolution action"); *see* Admin. R. M. § 42.15.401(4)(b) (2004) ("If a decree of divorce or legal separation . . . provides that the taxpayer may claim, and the other parent will not claim, a dependent exemption for a child for state income tax purposes, the taxpayer is treated as having provided over half of the child's support for Montana income tax purposes.").

¶30    The District Court acted within its discretion when it split the tax dependency deductions between both parties. Marlen included this provision in his proposed amended parenting plan, the parties presented evidence and testimony related to their respective financial contributions for the children since their dissolution, and the District Court considered the parties' financial contributions with respect to the children. This provision did not conflict with the Texas decree, nor did federal law preempt the court's ability to allocate these deductions. *In re Milesnick*, 235 Mont. at 93–94, 765 P.2d at 754–55. We find unpersuasive Sarah's attempts to distinguish *In re Milesnick* from the circumstances of this case. We accordingly affirm the tax dependency deduction provision in the amended parenting plan.

**CONCLUSION**

¶31 We affirm the District Court's allocation of the tax dependency deductions between the parties, but we reverse those provisions in the court's amended parenting plan ordering Sarah's new husband to attend counseling, allowing the absent parent to communicate with the children "regularly" instead of according to the parties' stipulation, and requiring the parties to mediate future disputes without requiring informed, written consent. We decline Marlen's request for M. R. App. P. 19(5) sanctions against Sarah, as we have determined that her appeal is not frivolous. We remand for revisions to the December 31, 2020 Amended Parenting Plan consistent with this Opinion.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

14