FILED

08/02/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0618

DA 15-0618

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 184

PETER ARNONE, DAVE BALDWIN,
ROSS HARTMAN, DAWNETTE OSEN,
and SHARON SWANSON,

      Petitioners and Appellants,

    v.

CITY OF BOZEMAN, Bozeman City
Commission and Jeff Kraus, Carson Taylor
Chris Mehl, Cynthia Andrus and I-HO Pomeroy
individually and as agents of the City of Bozeman,
and DOES 1-10, inclusive,

      Respondents and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                    In and For the County of Gallatin, Cause No. DV 14-656C
                    Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Michael J. San Souci, San Souci Law Office, Bozeman, Montana

        For Appellee:

                Michael J. Lilly, Berg, Lilly & Tollefsen, P.C., Bozeman, Montana

                                Submitted on Briefs:  May 11, 2016

                                      Decided:  August 2, 2016

Filed:

                             _____
                                       Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Bozeman residents Peter Arnone, Dave Baldwin, Ross Hartman, Dawnette Osen, and Sharon Swanson (collectively, "Petitioners"), appeal three orders issued by the Eighteenth Judicial District Court, Gallatin County: (1) denying the Petitioners' motion for summary judgment and dismissing their complaint; (2) denying the Petitioners' motion for reconsideration; and (3) granting a motion filed by City Commissioners Jeff Krauss, Carson Taylor, Chris Mehl, Cynthia Andrus, and I-Ho Pomeroy (collectively, "Commissioners") to dismiss the Petitioners' complaint against them in their individual capacities. We address the following issues:

1. *Whether the District Court erred in denying the Petitioners' motion for summary judgment and dismissing their complaint.*

2. *Whether the District Court abused its discretion in denying the Petitioners' motion for reconsideration.*

We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 In June 2014, the Bozeman City Commission (Commission) adopted Nondiscrimination Ordinance 1890 (Ordinance), which "prohibit[s] discrimination on the basis of actual or perceived sexual orientation or gender identity or expression" by landlords, providers of public accommodations, and parties engaged in residential real estate transactions. The Ordinance was codified as "Bozeman Ordinance Section 24.10.010 et seq." and became effective in July 2014. The Ordinance creates a private cause of action for an aggrieved party claiming a violation of one of its provisions and authorizes the Bozeman Municipal Court to fashion civil remedies, including injunctive

2

relief. The Ordinance defines an "aggrieved party" as "a person who can demonstrate a specific personal and legal interest, as distinguished from a general interest, and who has been or is likely to be specifically and injuriously affected by a violation of this article." The Ordinance contains an exception for landlords who rent "individual rooms in a private residence designed as a single dwelling unit in which the owner also resides."

¶3 In August 2014, the Petitioners filed suit against the City of Bozeman (City), the Commission, and the Commissioners (collectively, "Respondents"), seeking a legal declaration that the Ordinance is invalid because it is preempted by State law and beyond the scope of the Respondents' power or authority. In January 2015, the Petitioners filed a motion for summary judgment, again contending that the Ordinance is invalid as a matter of law. The Respondents opposed the motion, alleging that the Petitioners' complaint failed to present a justiciable case or controversy. The District Court held oral argument and, on September 15, 2015, issued an order denying the Petitioners' motion for summary judgment and dismissing their complaint on the ground that the Petitioners did not present a justiciable case or controversy. The District Court determined that the Petitioners were requesting an advisory opinion, lacked standing, and had not alleged a claim that was ripe for review. The Petitioners then filed a motion for reconsideration and to amend their pleadings, alleging that Osen's individual circumstances had materially changed since filing suit because although Osen—who was the only landlord among the Petitioners—was only renting out a room in her home at the time the Petitioners filed their complaint, she was now renting out her entire home. Therefore, the Petitioners argued that Osen was now subject to the Ordinance and had standing. The

3

District Court denied the motion for reconsideration and to amend. The Petitioners appealed.

## STANDARDS OF REVIEW

¶4 We review summary judgment orders de novo. *Bailey v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 119, ¶ 18, 370 Mont. 73, 300 P.3d 1149. Summary judgment is appropriate when the moving party demonstrates an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3). A district court's ruling on whether a justiciable controversy exists is a conclusion of law that we review for correctness. *Northfield Ins. Co. v. Mont. Ass'n of Cntys.* (*Northfield*), 2000 MT 256, ¶ 8, 301 Mont. 472, 10 P.3d 813. We review for abuse of discretion a district court's denial of a motion to alter or amend a judgment, *Locke v. Estate of Davis*, 2015 MT 141, ¶ 14, 379 Mont. 256, 350 P.3d 33, or a pleading, *Farmers Coop. Ass'n v. Amsden, LLC*, 2007 MT 286, ¶ 12, 339 Mont. 445, 171 P.3d 690.

## DISCUSSION

¶5 *1. Whether the District Court erred in denying the Petitioners' motion for summary judgment and dismissing their complaint.*

¶6 The District Court dismissed the Petitioners' complaint on multiple grounds. Although the Petitioners' appeal focuses almost entirely on the District Court's determination that they lacked standing, the District Court also held that they were requesting an advisory opinion, and that the issue was not ripe for review. We find the District Court's advisory opinion analysis to be dispositive of both issues before us.

¶7 "The judicial power of Montana's courts is limited to justiciable controversies," *Chipman v. Nw. Healthcare Corp.*, 2012 MT 242, ¶ 19, 366 Mont. 450, 288 P.3d 193. We consistently have held that we will not render advisory opinions. *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 9, 355 Mont. 142, 226 P.3d 567. To fall within a court's adjudicatory power, a controversy must be "real and substantial . . . , admitting of specific relief through decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition." *Plan Helena*, ¶ 9 (quoting *Chovanak v. Matthews*, 120 Mont. 520, 526, 188 P.2d 582, 585 (1948)).

¶8 The District Court concluded that the Petitioners sought an advisory opinion because "[t]he hypothetic facts are posited by [the Petitioners] as if they were currently subject to a complaint alleging a violation of the [Ordinance] filed in Municipal Court. In fact, none of the [Petitioners] are susceptible to such an action." The Petitioners have not substantively addressed the District Court's determination that they seek an advisory opinion, though that analysis is dispositive in this case.

¶9 Violation of the Ordinance requires third-party action. Specifically, the Petitioners must receive an application from an "aggrieved party"—i.e., someone the Ordinance was designed to protect—then reject that application for reasons the Ordinance was designed to address, and then be sued by the aggrieved party, in order for the Ordinance to be enforced. None of the Petitioners have alleged that he or she has experienced or engaged in any of these actions. Nor is it even possible for any of the Petitioners to engage in actions that would precipitate a conflict under the Ordinance of their own volition,

5

because of the need for an independent aggrieved party to initiate both the interaction that would provide the basis for a legal action under the Ordinance and then to pursue the legal action itself.

¶10    Although the Uniform Declaratory Judgment Act (UDJA) "is to be liberally construed and administered," *Lee v. State*, 195 Mont. 1, 6, 635 P.2d 1282, 1284 (1981) (citing § 27-8-102, MCA), it "does not license litigants to fish in judicial ponds for legal advice," *Mont. Dep't of Natural Res. & Conservation v. Intake Water Co.*, 171 Mont. 416, 440, 558 P.2d 1110, 1123 (1976) (citation omitted). *See also Northfield*, ¶ 10 ("[L]iberal interpretation of the [UDJA] is tempered by the necessity that a justiciable controversy exist before courts exercise jurisdiction."). In *Northfield*, secondary insurers sought a declaratory judgment as to their contractual duty to indemnify a primary insurer, even though the primary insurer had not yet sought indemnification. *Northfield*, ¶ 16. We held: "the judicial determination [the secondary insurers] seek involves a contractual duty which has not yet arisen and which may, in fact, never arise. A determination of the issue, therefore, would constitute an advisory opinion and courts have no jurisdiction to issue such opinions." *Northfield*, ¶ 18. In reaching this conclusion, we cited *Hardy v. Krutzfeldt*, 206 Mont. 521, 672 P.2d 274 (1983). *Northfield*, ¶ 18. In *Hardy*, the plaintiffs sought a judicial declaration that several preemptive rights of first refusal pertaining to their real property were unreasonable restraints on alienation. *Hardy*, 206 Mont. at 523, 672 P.2d at 275. We held that there was no justiciable controversy because there was no pending sale or offer for sale of the properties that would be affected by the rights of first refusal, and no third

party was seeking relief from the contractual provisions providing for the refusal rights. *Hardy*, 206 Mont. at 524-25, 672 P.2d at 275-76.

¶11 Here, the Petitioners have not alleged facts indicating that they have engaged or are about to engage in any concrete transaction that would violate the Ordinance, or that a potential aggrieved party has sued or threatened to sue them under the Ordinance. It is entirely possible that none of the Petitioners will ever be confronted with a situation in which they must decide whether to refuse accommodation to a person the Ordinance was designed to protect.

¶12 In *Gryczan v. State*, 283 Mont. 433, 942 P.2d 112 (1997), and *Mont. Immigrant Justice Alliance v. Bullock* (*MIJA*), 2016 MT 104, 383 Mont. 318, 371 P.3d 430, we held that the plaintiffs could challenge a law in court before it was enforced against them. The critical distinction between those two cases and the present case, however, is that in *Gryczan* and *MIJA* there existed at least a putative dispute between the plaintiffs and the defendants. In *Gryczan*, the plaintiffs were three homosexual couples who acknowledged their past violations of § 45-5-505, MCA, and their intent to violate the statute in the future. *Gryczan*, 283 Mont. at 439, 942 P.2d at 115-16. In *MIJA*, the plaintiffs met the definition of "illegal alien" set forth in LR 121 "because they entered the United States unlawfully, and . . . accordingly they will be deprived of state services even though they now are considered documented, lawful immigrants by the Department of Homeland Security." *MIJA*, ¶ 8. In both cases, the State defendants contested the plaintiffs' standing on the grounds that the challenged statutes had not been enforced and the State was not threatening enforcement. We rejected this argument in both cases, noting in

7

*MIJA* that "[t]he State's assurance that LR 121 will not be enforced against them under the current administration is insufficient to render MIJA's claims hypothetical, speculative, or illusory." *MIJA*, ¶ 26 (citation and internal quotation marks omitted).

¶13   In contrast to both *Gryczan* and *MIJA*, the Respondents in this case are not promising to withhold enforcing the Ordinance as a basis to render the Petitioners' claims "hypothetical, speculative, or illusory," *see MIJA*, ¶ 26, because the Respondents in this case have no basis to enforce the Ordinance against the Petitioners, in any event. The plaintiffs in both *Gryczan* and *MIJA* either had violated, or possessed the unilateral power to violate, the laws being challenged. Likewise, in both *Gryczan* and *MIJA*, the parties being sued—the State of Montana and various public officials—had the power to prosecute those violations. However, the Petitioners in this case do not have the power to unilaterally violate the Ordinance, and the Respondents do not have the power to prosecute violations of the Ordinance even if they wanted to. The only enforcement mechanism under the Ordinance is a private suit, brought by a private individual who meets the Ordinance's definition of an "aggrieved party." Notably, such an "aggrieved party" is not a Respondent in this case, nor has a potential aggrieved party been identified, precisely because no such individual exists, and such individual may never exist. In short, the Petitioners in this case ask us not only to resolve a hypothetical dispute, they seek resolution of a hypothetical dispute with an entirely hypothetical opponent.

¶14   As in *Northfield* and *Hardy*, the Petitioners are asking this Court to speculate about a transaction "which has not yet arisen and which may, in fact, never arise."

8

*Northfield*, ¶ 18; *see also Hardy*, 206 Mont. at 525, 672 P.2d at 276. We have held that "[t]he courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, . . . deal with theoretical problems, give advisory opinions, . . . provide for contingencies which may hereafter arise, or give abstract opinions," *Intake Water Co.*, 171 Mont. at 440, 558 P.2d at 1123 (citations omitted), yet that is exactly what the Petitioners ask us to do. The District Court correctly concluded that the Petitioners were requesting an advisory opinion and properly dismissed the case on summary judgment.

¶15 *2. Whether the District Court abused its discretion in denying the Petitioners' motion for reconsideration.*

¶16 The Petitioners allege that, because Osen began renting out her entire home during the course of the proceedings, she was no longer subject to the Ordinance's exception for landlords renting a room in their residence, and the District Court should have granted their motion for reconsideration or allowed them to amend their pleadings. In making this argument, the Petitioners again focus entirely on the District Court's determination that they lacked standing. Irrespective of her changed circumstances, Osen nevertheless seeks an opinion from this Court advising her as to what would be the legal outcome if she received an application from someone who meets the Ordinance's definition of an "aggrieved party," and if she rejected that application for reasons the Ordinance was designed to address, and if the aggrieved party then relied upon the Ordinance to seek redress in court. This is a situation that may never arise, and presents precisely the "hypothetical facts and abstract propositions" we previously have refused to address. *See*

9

*Northfield*, ¶ 14. A determination of the issue would constitute an advisory opinion, and the District Court did not abuse its discretion in denying the Petitioners' motion to amend their pleadings.

**CONCLUSION**

¶17 We affirm the District Court's order denying the Petitioners' motion for summary judgment and dismissing their complaint, and its order denying the Petitioners' motion for reconsideration and to amend. Because our resolution of these two issues is dispositive of the issue of whether the District Court erred in granting the Commissioners' motion to dismiss the complaint against them in their individual capacities, we decline to address this issue.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JIM RICE