FILED

03/27/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0165

DA 17-0165

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 57

INDEPENDENCE MEDICAL SUPPLY, INC.,

Petitioner, Appellant and Cross-Appellee,

v.

THE MONTANA DEPARTMENT OF PUBLIC
HEALTH AND HUMAN SERVICES, a department
of the State of Montana,

Respondent, Appellee and Cross-Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADV 15-902
Honorable Gregory S. Pinski, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Sean Morris, Worden Thane, P.C., Missoula, Montana

For Appellee:

Theran Fries, Special Assistant Attorney General, Department of Public
Health and Human Services, Helena, Montana

Submitted on Briefs:   December 28, 2017

Decided:   March 27, 2018

Filed:

_____

Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Independence Medical Supply, Inc., ("IMS") appeals a memorandum and order from the Eighth Judicial District Court, Cascade County, granting in part and denying in part judicial review of the Montana Department of Public Health and Human Services ("DPHHS") Fair Hearing Proposed Decision.  DPHHS cross appeals the decision.

¶2     We restate the dispositive issues as follows:

*Issue One: Whether the District Court abused its discretion by affirming the Hearing Officer's determination that physician affidavits introduced by IMS did not cure the technical violations of the supply orders.*

*Issue Two: Whether the District Court erred by concluding that by sending a letter on January 8, 2014, seeking repayment, DPHHS "commenced" an action for recovery of the alleged overpayments.*

¶3     We affirm in part and reverse in part.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4     DPHHS administers contracts with Medicaid medical suppliers and providers, such as IMS.  DPHHS conducts audits through its Surveillance and Utilization Review Section ("SURS"), pursuant to its statutory and regulatory authority.  In March of 2008, IMS signed a Montana Medicaid Provider Enrollment Agreement ("Enrollment Agreement") to provide incontinence supplies to Montana Medicaid patients in Great Falls and the surrounding area.  As part of the Enrollment Agreement, IMS agreed to comply with all applicable laws and regulations pertaining to the Montana Medicaid Program, including: Title XIX of the Social Security Act; the Code of Federal Regulations; the Montana Code Annotated; and the Administrative Rules of Montana.  IMS agreed to submit to DPHHS

2

audits as necessary and to repay any payment received under the Medicaid program to which IMS was not entitled.

¶5 On April 3, 2013, DPHHS sent a letter requesting IMS's records for the period of January 1, 2010 through December 31, 2012 for purposes of a departmental audit. On January 8, 2014, DPHHS sent a letter to IMS with the results of the audit. The audit concluded that DPHHS overpaid IMS and was entitled to reimbursement in the amount of $670,152. DPHHS identified several technical violations in the supply orders IMS submitted. DPHHS determined that many orders were incorrectly coded or incomplete and missing one or more of the following: supply description, quantity, diagnosis, length of need, or a physician's signature. DPHHS's letter also alerted IMS that it could request an administrative review of the audit findings. IMS requested administrative review.

¶6 DPHHS then held an Administrative Review Conference. After the first Conference, IMS obtained counsel, and the parties agreed IMS would be allowed time to gather additional information. On September 30, 2014, a second Administrative Review Conference was held, at which IMS submitted 60 affidavits signed by physicians and other health care providers. The affidavits were intended to demonstrate that the supplies provided to patients whose claims were the subject of the audit were medically necessary, and were intended to cure the defects in the orders identified by DPHHS.

¶7 On December 9, 2014, DPHHS issued an Administrative Review Determination affirming its prior decision. Citing Admin. R. M. 37.85.414(1)(a), DPHHS wrote: "This documentation from physicians attesting to appropriate and medically necessary supplies

3

for the clients of [IMS was] received well beyond the 90 days given to complete a medical record from the date the services were billed to Montana Medicaid."

¶8 IMS requested a fair hearing to contest the Administrative Review overpayment determination. IMS moved for summary judgment, contending that the two-year statute of limitations set forth in § 27-2-211(1), MCA, applied to DPHHS's claim for repayment. Because the audit concerned claims submitted between January 1, 2010 and December 31, 2012, IMS contended DPHHS's claims were precluded by the two-year statute of limitations. The Hearing Officer denied IMS's motion for summary judgment. He held that an eight-year statute of limitations applied to the present action because the dispute arose from the contractual relationship between DPHHS and IMS.

¶9 On June 9, 2015, the Hearing Officer conducted an administrative hearing ("Fair Hearing"). Over DPHHS's hearsay objection, the Hearing Officer admitted IMS's affidavits into evidence. A DPHHS employee testified, identifying the issues and incompleteness of each individual affidavit. An IMS employee also testified but did not rebut the incompleteness of the supply orders and subsequent attempts to remedy; no physicians testified.

¶10 On August 11, 2015, the Hearing Officer issued his Proposed Decision. The Hearing Officer determined that IMS did not meet its regulatory requirements in the supply orders submitted to DPHHS. He found that the physician affidavits failed to cure the deficiencies and had no evidentiary value because:

> [The affidavits] were provided to physicians (years after the fact) with tables created by [IMS personnel] from invoices (which were not reviewed at the hearing) which allegedly establish the type of incontinence supply which was

4

medically necessary for each patient, the quantity of each incontinence supply which the physician would have ordered back in 2010 through 2012, and the approximate length of time each type of incontinence supply was medically necessary for each patient.

Without a "crystal ball," however, which could be used to look back into time to see what each individual patient actually required, it is impossible to fix the defective physician orders which should have included the required information at the time the incontinence supplies were ordered, and allegedly provided to each patient.

¶11 The Hearing Officer upheld DPHHS's Administrative Review Determination that DPHHS, under its regulations promulgated under the authority of §§ 53-6-101, -113, MCA, and Title XIX of the Social Security Act, 42 U.S.C. § 1396, et. seq., was entitled to the full repayment of $670,152, with interest. IMS petitioned for judicial review.

¶12 The District Court held oral argument on April 21, 2016, and issued an order on September 19, 2016. The District Court conducted its own review of the affidavits, the testimony given about the affidavits, and the Hearing Officer's Proposed Decision. The District Court held that the Hearing Officer did not err by rejecting the affidavits.

¶13 The District Court held that the Hearing Officer incorrectly applied the eight-year statute of limitations for contract actions because DPHHS relied upon its statutory right to repayment rather than the contract between DPHHS and IMS. Thus, the District Court held that the two-year statute of limitations found in § 27-2-211(1)(a), MCA, applied to DPHHS's overpayment claim. The District Court concluded the cause of action accrued once the ninety-day period passed to submit full supply order details for each order because that was the point at which IMS could not supplement information to the orders, so that is when any technical violations occurred. The District Court concluded that the action was

5

commenced on January 8, 2014, when DPHHS notified IMS of the overpayment by letter. The District Court also denied IMS's request for an award of attorney fees under the Uniform Declaratory Judgment Act ("UDJA").

¶14 IMS appeals the District Court's Order upholding the Hearing Officer's Proposed Decision that the physician affidavits did not cure the technical violations, and the denial of attorney fees. DPHHS cross appeals the District Court's holding that the two-year statute of limitations applies to its claim for repayment.

## STANDARDS OF REVIEW

¶15 A district court reviews an agency decision under § 2-4-704, MCA. *Hohenlohe v. State*, 2010 MT 203, ¶ 22, 357 Mont. 438, 240 P.3d 628 (citing § 2-4-704, MCA); *Ulrich v. State ex rel. Board of Funeral Serv.*, 1998 MT 196, ¶ 13, 289 Mont. 407, 961 P.2d 126. The same standards of review apply to both the district court's review of the agency's decision and to our review of the district court's decision. *Blaine Cnty. v. Stricker*, 2017 MT 80, ¶ 16, 387 Mont. 202, 394 P.3d 159; *Cruson v. Missoula Electric Coop. Inc.*, 2015 MT 309, ¶ 17, 381 Mont. 304, 359 P.3d 98.

¶16 We review agency findings to determine whether the findings of fact are clearly erroneous and whether the agency correctly applied the law. Section 2-4-704(2)(a)(iv)–(v), MCA; *Blaine Cnty.*, ¶ 16; *Steer, Inc. v. Dep't of Revenue*, 245 Mont. 470, 474, 803 P.2d 601, 603 (1990). The interpretation of an administrative rule is a question of law. *State Pers. Div. v. Dep't of Pub. Health & Human Servs., Child Support Div.*, 2002 MT 46, ¶ 62, 308 Mont. 365, 43 P.3d 305.

¶17 An agency's interpretation of its own rule is afforded great weight, and we will sustain an agency's interpretation "so long as it lies within the range of reasonable interpretation permitted by the wording." *Clark Fork Coal. v. Dep't of Envtl. Quality*, 2012 MT 240, ¶ 19, 366 Mont. 427, 288 P.3d 183; *Kirchner v. Dep't Public Health and Human Servs., Div. of Quality Assur.*, 2005 MT 202, ¶ 26, 328 Mont. 203, 119 P.3d 82. We may reverse or modify an agency decision if the rights of the appealing party have been prejudiced because "the administrative findings, inferences, conclusions, or decisions are . . . arbitrary or capricious or characterized by an abuse of discretion . . . ." Section 2-4-704(2)(a)(vi), MCA (internal citations omitted).

¶18 Whether a district court correctly applied the statute of limitations is a question of law that we review for correctness. *Belanus v. Potter*, 2017 MT 95, ¶ 14, 387 Mont. 298, 294 P.3d 906; *Wing v. State*, 2007 MT 72, ¶ 9, 336 Mont. 423, 155 P.3d 1224.

¶19 We review a district court's grant or denial of attorney fees for an abuse of discretion. *City of Helena v. Svee*, 2014 MT 311, ¶ 7, 377 Mont. 158, 339 P.3d 32.

## DISCUSSION

¶20 *Issue One: Whether the District Court abused its discretion by affirming the Hearing Officer's determination that physician affidavits introduced by IMS did not cure the technical violations of the supply orders.*

¶21 The Montana Medicaid Program is a jointly funded federal-state program administered under § 53-6-101, MCA, and in accordance with Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et. seq.*, (2014). DPHHS administers the Montana Medicaid Program and adopts all necessary rules for such administration as may be required by federal and state laws and regulations. Section 53-6-113, MCA.

7

¶22     To participate in the Montana Medicaid Program, all providers must comply with applicable state and federal statutes and regulations.  Admin. R. M. 37.85.401 (2017).[1] DPHHS may require a provider to submit documentation and information demonstrating compliance with applicable participation requirements.  Admin. R. M. 37.85.402 (2017). Providers are required to maintain records which demonstrate "the extent, nature, and medical necessity of services and items provided to Montana Medicaid recipients," and the records must support the fee charged or payment sought for services and items billed. Admin. R. M. 37.85.414 (2017); *see also* Admin. R. M. 37.86.1801(1) (2017) (defining "[d]urable medical equipment and supplies" as the "most economical equipment or supplies that are medically necessary to treat a health problem or a physical condition. . . ."). All records that support a claim for reimbursement must be complete within ninety days after the date on which the claim was submitted to Medicaid for reimbursement.  Admin. R. M. 37.85.414(1)(a) (2017).  Further, DPHHS may inspect or evaluate the quality, appropriateness, and timeliness of services performed by a provider and audit relevant records.  Admin. R. M. 37.85.414(3).

¶23     If DPHHS pays a claim and later discovers a provider is not entitled to payment for any reason, including that the service or item billed was not medically necessary, DPHHS is entitled to recover the overpayment.    Section  53-6-111(2),  MCA  (defining "overpayment" as an amount to which "the provider was not entitled"); Admin. R. M.

---

[1]  All Administrative Rules of Montana are current through 2017, and the regulations cited have not changed or been substantively amended since DPHHS and the District Court applied them in these proceedings, beginning in 2013.

8

37.85.406(10) (2017); Admin. R. M. 37.85.410 (2017); Admin. R. M. 37.85.414(1)(g). If DPHHS conducts an audit, a provider must have sufficient records to demonstrate the provider was entitled to be paid for the claims; if the records do not exist, the item or service is deemed not to have been provided, and DPHHS is entitled to recover all reimbursement paid to the provider. Admin. R. M. 37.85.414(1)(g).

¶24 At the Fair Hearing, the Hearing Officer, over DPHHS's objections, received the physician affidavits into evidence and heard testimony from DPHHS about the insufficiencies and omissions in the affidavits. In his Proposed Decision, the Hearing Officer determined that the supply orders at issue violated Admin. R. M. 37.86.1801(2) because they lacked "the required detail necessary to meet the billing and record keeping requirements for Montana Medicaid." *See* Admin. R. M. 37.86.1802(2) (2017). The Hearing Officer ultimately rejected the affidavits because they failed to cure the deficiencies in the orders, *see* Admin. R. M. 37.85.414(1)(a), and concluded that DPHHS correctly sought repayment of the claims at issue and was entitled to the full repayment of $670,152 with interest, § 53-6-111(2)(b)–(c), MCA; § 31-1-106, MCA; Admin. R. M. 37.85.406; Admin. R. M. 37.85.414.

¶25 The District Court held that the Hearing Officer did not err when he rejected the affidavits that IMS provided. The District Court reasoned that the Hearing Officer "considered the affidavits, received testimony from both sides as to the relative weight of the affidavits, and ultimately concluded the affidavits did not cure the technical violations."

¶26 IMS argues that the Hearing Officer erroneously determined that the affidavits were unable to cure the supply order deficiencies and that the District Court erred when it

9

concluded the Hearing Officer did not abuse his discretion in rejecting the affidavits. DPHHS argues the affidavits were properly rejected because they were records created more than ninety days after submission of the claims, and were thus prohibited by Admin. R. M. 37.85.414, and they were unreliable hearsay.

¶27 Ultimately, the Hearing Officer admitted the affidavits into evidence, considered the affidavits, and heard testimony from both sides regarding the evidentiary value of the affidavits. The Hearing Officer then made factual findings that the affidavits were unreliable and lacked evidentiary value in determining whether the orders for incontinence supplies met the applicable requirements of Montana Medicaid. The Hearing Officer found that "testimony supports the conclusion that the only evidentiary value the affidavits have is to support the conclusion that the patients had a condition for which incontinence supplies were ordered," and that they did not meet the requirements of Admin. R. M. 37.85.414, which required a prescription to include a description of the incontinence supply being provided, the medical necessity of each item, the quantity of each item provided, and the anticipated length of need.

¶28 There was ample evidence in the record to support the Hearing Officer's findings. The Hearing Officer noted several omissions in the affidavits that rendered them useless in attempting to cure the technical deficiencies in the supply orders, and that "[t]o merely indicate on the prescription form or order that incontinence supplies [were] being provided, without actually providing any quantifiable information, constitute[d] insufficient detail." On judicial review, the District Court reviewed the affidavits, considered the testimony

10

regarding the affidavits, and concluded that the Hearing Officer did not abuse his discretion in rejecting the affidavits.

¶29 The District Court did not abuse its discretion by affirming the Hearing Officer's determination that the physician affidavits introduced by IMS did not cure the technical violations of the supply orders.

¶30 *Issue Two: Whether the District Court erred by concluding that by sending a letter on January 8, 2014, seeking repayment, DPHHS "commenced" an action for recovery of the alleged overpayments.*

¶31 The District Court held:

Section 27-2-102(1)(b), MCA, states: "an action is commenced when the complaint is filed." In this case, the Court concludes that the cause of action commenced on January 8, 2014, when DPHHS notified [IMS] of an overpayment of $670,152. This notification set in play the administrative process that led to the administrative hearing, the agency decision, and ultimately this appeal.

The District Court correctly cited § 27-2-102(1)(b), MCA, for the authority that "an action is commenced when the complaint is filed." *See also* M. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). However, the District Court then concluded that DPHHS's January 8, 2014 letter to IMS commenced the cause of action, even though the letter is inarguably not a complaint within the meaning of either § 27-2-102, MCA, or M. R. Civ. P. 3.

¶32 A review of DPHHS's January 8, 2014 letter and the other correspondence between IMS and DPHHS before and after this letter reinforces the conclusion that DPHHS never commenced an action in this case. On April 3, 2013, DPHHS sent a letter to IMS informing IMS that DPHHS was conducting an audit and requested certain records be sent to DPHHS

11

for review. DPHHS's January 8, 2014 letter informed IMS of the audit results and requested that IMS "[p]lease remit a check to [DPHHS] for $670,152.00 to be received by our office no later than February 8, 2014." In a letter dated June 13, 2014, DPHHS extended the administrative review conference date and noted its willingness to compromise, treating its communications with IMS as if the two were engaged in negotiations prior to filing a lawsuit. The DPHHS lawyer specifically stated: "I appreciate that a judgment in the amount of the overpayment plus accrued interest might put your client into bankruptcy or force it out of business. But, I am not sure why entering into a repayment agreement would put your client out of business."

¶33 The attorneys for IMS then requested an administrative review and Fair Hearing. Pursuant to IMS's request, a Fair Hearing was held, and the Hearing Officer ruled that DPHHS was entitled to the full repayment of $670,152, with interest. IMS then filed an action in District Court, seeking judicial review of the Hearing Officer's ruling.

¶34 DPHHS never commenced an action because DPHHS never filed a complaint. Montana law is explicit about the requirements of commencing an action. Both M. R. Civ. P. 3 and § 27-2-102(1)(b), MCA, state that an action is commenced when the complaint is filed. No complaint was filed in this case; thus, no action was commenced.

¶35 Section 53-6-111(2), MCA, sets forth a provider's liability to DPHHS in the event of an overpayment, and the methods by which DPHHS may seek recovery of the overpayment:

> (2)(a) The department is entitled to collect from a provider, and a provider is liable to the department for:

> (i) the amount of a payment under this part to which the provider was not entitled if the incorrect payment was the result of the provider's error . . . or if the provider's interpretation of the pertinent rule or billing code is not reasonable; and
>
> (ii) the portion of any interim rate payment that exceeds the rate determined retrospectively by the department for the rate period.
>
> .   .   .
>
> (d) The department may collect any amount described in subsection (2)(a) by:
>
> (i) withholding current payments to offset the amount due;
>
> (ii) applying methods and using a schedule mutually agreeable to the department and the provider; or
>
> (iii) any other legal means.

Section 53-6-111(2), MCA.

¶36    In 2017, the Montana Legislature amended § 53-6-111, MCA.  Effective July 1, 2017, Section 2(3) of Senate Bill 82 establishes a three-year lookback period for Medicaid overpayment audits, stating in part:

> (3)(a) For an initial overpayment audit, the department or an auditor may request up to 6 months of records from a provider for claims paid by the medicaid program up to 3 years before the request was made.
>
> (b) If the department or an auditor demonstrates a significant error rate, the department or the auditor with the department's approval may request additional records related to the issue under review for purposes of a followup audit.
>
> (c) The 3-year limitation in subsection (3)(a) does not apply to a record request by the department or auditor for purposes of a followup audit but does apply to such a request by a recovery audit contractor.
>
> (4) The department or an auditor may not request records or perform an overpayment audit regarding services that were provided outside the period

> of time for which providers are required by applicable law to retain records for purposes of the medicaid program.

S. 82, 2017 Leg. Reg. Sess. § 2(3)–(4) (Mont. 2017). With these amendments, the Legislature recognized that the statutes in effect at the time of this dispute did not address time limitations applicable to DPHHS's right to conduct an audit of provider records and to seek return of overpayments. The three-year lookback period established by these amendments remedied this situation.

¶37 The issue of which statute of limitations applied to this dispute was presented to the Hearing Officer and the District Court. Thus, we appreciate that the District Court felt obligated to address and resolve the issue. However, the statute of limitations is relevant to this dispute only to the extent that it might determine whether an action has been timely commenced. In this case, DPHHS has never commenced an action to recover the overpayment; § 53-6-111(2)(d), MCA, in fact, allows DPHHS to recover an overpayment by methods other than commencement of an action. Determining what, if any, statute of limitations may hypothetically apply to an action DPHHS may hypothetically commence would constitute an advisory opinion. This Court has consistently held that we will not render advisory opinions. *Arnone v. City of Bozeman*, 2016 MT 184, ¶ 7, 384 Mont. 250, 376 P.3d 786 (citing *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 9, 355 Mont. 142, 226 P.3d 567).

## CONCLUSION

¶38 The District Court did not abuse its discretion by affirming the Hearing Officer's determination that the physician affidavits introduced by IMS did not cure the technical

violations of the supply orders. The District Court incorrectly held that DPHHS's January 8, 2014 letter commenced an action for recovery of the overpayment. Because DPHHS never filed a complaint, it did not commence an action within the meaning of § 27-2-102(1)(b), MCA, and M. R. Civ. P. 3.

¶39 We affirm in part and reverse in part.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER