DA 20-0588

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 4N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

RYAN PATRICK SULLIVAN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 18-0321
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Chad Wright, Appellate Defender, Deborah S. Smith, Assistant
Appellate Defender, Helena, Montana

       For Appellee:

           Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

           Scott Twito, Yellowstone County Attorney, Sarah L. Hyde, Deputy
County Attorney, Billings, Montana

                              Submitted on Briefs:  October 26, 2022

                                    Decided:  January 10, 2023

Filed:

                                       Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Ryan Patrick Sullivan (Sullivan) appeals from multiple Thirteenth Judicial District Court revocations of his suspended sentences in proceedings under two district court cause numbers. We affirm in part and reverse and remand in part.

¶3 On November 14, 2018, pursuant to a guilty plea, Sullivan received a five-year deferred sentence for assault of his girlfriend, M.A., in cause number DC 18-321. The State subsequently filed separate charges, in cause number DC 19-829, based on allegations of numerous abusive communications from Sullivan to M.A., resulting in a jury verdict of guilty for witness tampering and privacy in communication violations. On the basis of these same allegations, the State also petitioned for a revocation of Sullivan's sentence in DC 18-321. Sullivan admitted the violations and, on October 1, 2020, the District Court simultaneously conducted a sentencing in DC 19-829 and a revocation disposition under DC 18-321. The District Court revoked the suspended sentence in DC 18-321, and sentenced Sullivan to 20 years, ten suspended, with an eight-year parole

restriction.[1]  Notably, while the subsequent October 13, 2020 written order of revocation stated that the prior conditions, which included Condition 23, forbidding contact with M.A., "remain unchanged and are *imposed*," the District Court stated during the oral pronouncement that the prior conditions would be "*recommended* to the state of Montana for you."  (Emphases added.)  However, at one point during the oral pronouncement, the court admonished: "Mr. Sullivan, you will no longer make any contact with [M.A.]  You will sit and face forward.  Understood?"

¶4      Shortly thereafter, the State filed a first petition to revoke the suspended sentences in DC 19-829 and a second petition to revoke the suspended portion of Sullivan's recently-revised sentence in DC 18-321.  The State alleged that, just two days after the October 1, 2020 dispositional/sentencing hearing, Sullivan, through a third party, had orchestrated the relaying of a happy birthday text message to M.A. from jail.  At a March 26, 2021 contested evidentiary hearing, the District Court found that the State had shown by a preponderance of the evidence that Sullivan had violated the conditions of probation. At the end of the hearing, the District Court pronounced its judgment that it would "reimpose the exact same sentence as I did October 1 of 2020."  The District Court subsequently issued a second written order of revocation in DC 18-321 (20 years, ten suspended) and a first order of revocation in DC 19-829 (all suspended, to run concurrent with DC 18-321).

---

[1] The court also gave Sullivan a suspended sentence in DC 19-829, the final judgment of which is the subject of a separate appeal before this Court in DA 20-0589.

3

¶5 Sullivan appeals the revocation order in DC 19-829 and both revocation orders in DC 18-321. This Court reviews sentences longer than one year for legality. *State v. Garrymore*, 2006 MT 245, ¶ 9, 334 Mont. 1, 145 P.3d 946. A sentence is legal if it falls within statutory parameters. *State v. Kotwicki*, 2007 MT 17, ¶¶ 15-16, 335 Mont. 344, 151 P.3d 982. We review a district court's decision to revoke a suspended sentence to determine whether the court abused its discretion. *State v. Jardee*, 2020 MT 81, ¶ 5, 399 Mont. 459, 461 P.3d 108. Statutory interpretation is a matter of law reviewed de novo for correctness. *State v. Oropeza*, 2020 MT 16, ¶ 14, 398 Mont. 379, 456 P.3d 1023.

**October 13, 2020 First Written Order of Revocation in DC 18-321**

¶6 Sullivan argues that the October 13, 2020 first written order of revocation in DC 18-321 is illegal for three reasons. First, Sullivan contends that the written order erroneously listed November 14, 2018, rather than December 8, 2018, as the end of the date range used to calculate his time served. The State concedes that Sullivan is entitled to an additional 24 days of credit for time served, as was provided for in the District Court's oral pronouncement, and does not oppose remanding to correct the written order.

¶7 Second, Sullivan argues that the written order is confusing and "opaque." Sullivan points to the written order's statement that "[i]n all other respects, the previous Orders, conditions, and reasons of this Court entered on November 14, 2018 [(the date of the original sentencing under DC 18-321)], remain unchanged and are imposed." According to Sullivan, this was not included in the oral pronouncement, there are no "Orders" from November 14, 2018, and the reference to the sentence orally imposed on November 14,

4

2018, was confusing because the court's present order was revoking and superseding that sentence and therefore could not incorporate it by reference.

¶8     During the October 1, 2020 oral pronouncement revoking the suspended sentence in DC 18-321, the District Court stated:

> The conditions set forth in that presentence investigation contained within DC 18-321, the conditions that you were supposed to live by previously when you were returned to New York will be the conditions recommended to the state of Montana for you.

> .   .   .

> The conditions set forth in that presentence investigation report are the conditions that will be recommended to the Montana State Prison and to probation and parole once he's on parole and on the suspended ten years in DC-18-321.

¶9     The original sentence in DC 18-321, as reflected in a November 19, 2018 written judgment, contained 27 probation conditions.  Thus, the clear intent of the October 1, 2020 oral pronouncement, like the subsequent October 13, 2020 written judgment, was to continue the conditions that had been part of the original sentence.  The resulting written judgment was not confusing or opaque.

¶10    Third, Sullivan argues that the October 13, 2020 written judgment conflicts with the oral pronouncement by stating that the prior conditions were "imposed," rather than merely "recommended," to the Department of Corrections (DOC).  The State generally concedes that the oral pronouncement "recommended" Conditions 1-22 and 24-27 to the DOC and that the written order ostensibly "impos[ing]" those listed conditions conflicts with that

pronouncement.[2] *State v. Lane*, 1998 MT 76, ¶ 40, 288 Mont. 286, 957 P.2d 9 (sentence orally pronounced from the bench in the presence of the defendant is the legally effective sentence).

¶11 However, the State argues that Condition 23, forbidding Sullivan from having any contact with M.A., was actually imposed, rather than merely recommended, as part of the oral pronouncement, when the court stated: "Mr. Sullivan, you will no longer make any contact with [M.A.] You will sit and face forward. Understood? Understood?" Sullivan responds that the District Court was merely admonishing Sullivan for turning around in his seat to stare down M.A. during the sentencing, rather than specifically imposing Condition 23 as a requirement upon him. Upon reviewing the record, we agree with the State that the District Court did specifically impose, rather than merely recommend, the no-contact order of Condition 23 upon Sullivan during the first revocation proceeding.

¶12 Both parties ask us to remand the October 13, 2020 first written order of revocation in DC 18-321 to the District Court to correct the calculation of credit for time served and to restate Conditions 1-22 and 24-27 as recommended, rather than imposed. However, the imposed sentence reflected in the October 13, 2020 written order at issue was subsequently revoked and superseded by a new sentence imposed on March 26, 2021, pursuant to a

---

[2] The State argues that Conditions 1-12, as recommended to the DOC, are "standard" or "stock" conditions pursuant to DOC rules and may therefore be imposed by the DOC. Sullivan's appeal contains no contention that any of the conditions recommended to the DOC could not ultimately be imposed by the DOC. As there is no actual controversy before the Court on this issue, it is not justiciable and we do not address it. *Arnone v. City of Bozeman*, 2016 MT 184, ¶ 7, 384 Mont. 250, 376 P.3d 786.

second revocation in DC 18-321, as discussed below.[3]  Because the sentence reflected in the October 13, 2020 first revocation order has been revoked and is no longer in effect, there is no need to remand it for correction.

**March 26, 2021 Second Oral Disposition of DC 18-321 and Oral Disposition of DC 19-829**

¶13     Sullivan argues that the second revocation in DC 18-321 and the first revocation in DC 19-329 are illegal for two reasons.  First, the revocations were based upon a finding that Sullivan was responsible for sending a happy birthday text to M.A. shortly after his first revocation.  Because Sullivan contends that he was not in fact subject to a no-contact condition at the time (only a recommendation to the DOC to impose it at a later date when Sullivan moved to a supervisory portion of his sentence) the contact was not a violation that could support the new revocations.  However, because we reject Sullivan's contention that the no-contact requirement of Condition 23 was never imposed, Sullivan's argument that violation of that requirement cannot form the basis of a revocation must likewise fail.

¶14     Second, Sullivan argues in the alternative that his alleged behavior was not subject to direct revocation before the State pursued incentives and interventions under the Montana Incentives and Interventions Grid (MIIG) pursuant to § 46-18-203(7), MCA.  The MIIG statute divides probationary violations into two categories—compliance violations and non-compliance violations.  Section 46-18-203(7)-(8), (11)(b), MCA.  Before revoking a suspended sentence, a district court must determine if the violation was a compliance

---

[3] Both the issue of calculation of credit for time served and the issue of restating Conditions 1-22 and 24-27 as recommendations in the new sentence are addressed below.

7

violation or not. While, in the case of a non-compliance violation, a district court may revoke a defendant's sentence directly, for probationary violations that qualify as mere compliance violations, a district court must, before revoking a sentence, first make a determination as to whether MIIG measures have been exhausted or whether an offender would not be responsive to further efforts under the MIIG. Section 46-18-203(6)(a), (7)(a), (8)(a)-(c), MCA; *State v. Pennington*, 2022 MT 180, ¶ 21 n.1, 410 Mont. 104, 517 P.3d 894. Sullivan argues that the District Court made no such findings before sentencing him.

¶15 Sullivan did not raise this objection below. Issues not preserved by contemporaneous objection are generally waived and thus not subject to review on direct appeal. Section 46-20-104(2), MCA; *State v. Thibeault*, 2021 MT 162, ¶ 9, 404 Mont. 476, 490 P.3d 105. Under a sentence-specific exception set forth in *State v. Lenihan*, 184 Mont. 338, 342-43, 602 P.2d 997, 999-1000 (1979), "unpreserved assertions of error that a particular sentence or sentencing condition was either facially illegal (i.e., of a type or character not authorized by statute or otherwise in excess of the statutorily authorized range or limit for that type of sentence or condition), or facially legal but authorized by a facially unconstitutional statute, are subject to review for the first time on appeal," the so-called *Lenihan* rule. *Thibeault*, ¶ 9 (citing *Lenihan*, 184 Mont. at 342-43, 602 P.2d at 999-1000). However, "unpreserved challenges to sentences or conditions on the basis of non-compliance with affirmative statutory prerequisites or mandates for that type of sentence or condition are not reviewable under the *Lenihan* exception." *Thibeault*, ¶ 10 n.4 (emphasis omitted). *See, e.g.*, *State v. Youpee*, 2018 MT 102, ¶ 11, 391 Mont. 246, 416 P.3d 1050 (*Lenihan* exception not applicable to unpreserved objection that court "fail[ed]

to state the reason for" facially legal denial of discretionary street credit as required by § 46-18-203(7)(b), MCA (2015)) (internal citations omitted); *State v. Swoboda*, 276 Mont. 479, 481-82, 918 P.2d 296, 298 (1996) (*Lenihan* exception not applicable to unpreserved objection to facially legal sentence that court failed to consider sentencing alternatives as required by statute). Put another way, "a sentencing court's failure to abide by a statutory requirement rises to an objectionable sentence, not necessarily an illegal one that would invoke the *Lenihan* exception." *Kotwicki*, ¶ 13.

¶16 We recently held in *State v. Tippets*, 2022 MT 81, ¶¶ 12-14, 408 Mont. 249, 509 P.3d 1, that an argument that the "District Court did not follow the statutory procedure for compliance violations" under the MIIG statute is, for purposes of *Lenihan*, an assertion of an "objectionable," rather than "illegal," sentence and therefore not subject to unpreserved review.[4] Sullivan's unpreserved argument is that the District Court, by revoking his sentence without first making required findings under the MIIG scheme, failed to follow "affirmative statutory prerequisites or mandates" for his sentence. *Thibeault*, ¶ 10 n.4. It is therefore not reviewable here on appeal under *Lenihan*. *Tippets*, ¶ 14; *Thibeault*, ¶ 10 n.4; *Kotwicki*, ¶ 13.

---

[4] Sullivan's efforts to factually distinguish *Tippets*—on the basis of that defendant's multiple probation violations, poor adjustment to supervision, and the DOC's responses to these violations—are unavailing. The *Tippets* decision plainly rested not on the details of that defendant's missteps, but instead on the holding that unpreserved challenges to a district court's alleged failure to follow the MIIG procedures in revocation proceedings are not reviewable under the *Lenihan* exception. *See Tippets*, ¶¶ 12-14.

**April 14, 2021 Second Written Order of Revocation in DC 18-321 and First Written Order of Revocation in DC 19-829**

*Credit for Time Served*

¶17 Sullivan contends that the written orders of revocation made pursuant to the second DC 18-321 revocation and the DC 19-829 revocation failed to provide him with sufficient credit for time served. At the end of the March 26, 2021 combined revocation hearing in DC 18-321 (second) and DC 19-829 (first), the court stated that it was "going to reimpose the exact same sentence as I did [on] October 1 of 2020." The parties agree that sentence granted Sullivan time served in DC 18-321 from March 5, 2018, through December 8, 2018,[5] and August 1, 2019, through October 1, 2020, and, in DC 19-829, from August 1, 2019, to October 1, 2020. The subsequent April 14, 2021 written orders of revocation, however, give Sullivan credit for time served only for October 27, 2020, through March 26, 2021 (the date of the dispositional hearing), in DC 18-321 and October 20, 2020, through March 26, 2021 in DC 19-829. The State concedes that the written sentencing orders should have incorporated the time served from the prior sentences and does not oppose remanding to correct the written orders to that effect. Where the parties disagree, however, is with regard to whether Sullivan should also have received credit for time served during the intervening time from October 1, 2020, to October 27, 2020, in

---

[5] This is the correct date range that the parties agree the District Court miscalculated in its subsequent October 13, 2020, written order, as discussed *supra*, ¶¶ 6, 12.

DC 18-321 and October 1, 2020, to October 20, 2020, in DC 19-829. The State contends that there is no evidence that Sullivan was actually incarcerated during this time.

¶18 "A person incarcerated on a bailable offense against whom a judgment of imprisonment is rendered must be allowed credit for each day of incarceration prior to or after conviction, except that the time allowed as a credit may not exceed the term of the prison sentence rendered." Section 46-18-403(1), MCA.[6] During the combined DC 18-321 dispositional and DC 19-829 sentencing hearing on October 1, 2020, the District Court sentenced Sullivan to the Montana State Prison for 20 years, ten suspended, with an eight-year parole restriction. At the end of that hearing, the court ordered that Sullivan was "remanded to the custody of the Yellowstone County Detention [Facility (YCDF)] with placement at the Montana State Prison." In an October 5, 2020 affidavit supporting the second petition to revoke, alleging that Sullivan had orchestrated an unlawful third-party contact of M.A. from jail, the State acknowledged that Sullivan was currently incarcerated. On October 22, 2020, Sullivan filed a pro se "writ of error coram nobis" from YCDF. On October 26, 2020, the Sentence Review Division addressed a letter to Sullivan at YCDF. The minutes from the October 27, 2020 hearing to serve the revocation petition and set bond state that Sullivan appeared by video from YCDF and that "[t]he defendant *remains* remanded to the custody of a Deputy Sheriff." (Emphasis added.) Moreover, the State's Response Brief here on appeal itself appears to acknowledge that

---

[6] A revocation order granting less credit than a defendant is entitled to violates statutory mandates and is an illegal sentence reviewable under *Lenihan*. *State v. McCaslin*, 2011 MT 221, ¶ 8, 362 Mont. 47, 260 P.3d 403.

11

Sullivan was incarcerated, stating that "on October 1, 2020, Sullivan began serving his suspended sentence in DC-19-829, concurrent with his custodial sentence in DC-18-321."

¶19 The record sufficiently demonstrates that Sullivan was incarcerated during the month of October 2020. The District Court ordered the sentences in DC 18-321 and DC 19-829 to run concurrently, thereby requiring that Sullivan be credited for all time served against both sentences. *State v. Damon*, 2007 MT 276, ¶ 12, 339 Mont. 413, 170 P.3d 490. Sullivan is entitled to credit for time served during that time in both DC 18-321 and DC 19-829. Thus, the written order of revocations in both DC 18-321 and DC 19-829 are remanded to incorporate credit for the prior time served up through March 26, 2021.[7]

*Statement of Conditions*

¶20 Finally, Sullivan argues that the written orders for the second revocation in DC 18-321 and the first revocation in DC 19-829 again described conditions as requirements, rather than recommendations, and are therefore similarly in contravention of the corresponding oral judgments. During the oral pronouncement in the combined dispositional hearing for both DC 18-321 and DC 19-829, the District Court stated that it was "going to reimpose the exact same sentence as I did October 1 of 2020" and was "going to reimpose those same sentences." As noted above, the State concedes that, under DC 18-321, the October 1, 2020 oral pronouncement provided that Conditions 1-22 and 24-27 were merely recommended to the DOC. However, the written second order of

---

[7] The State notes that the District Court declined to give Sullivan credit for elapsed time in both proceedings. A denial of elapsed time under § 46-18-203(7)(b), MCA, is independent of and distinct from the question of credit for time served under § 46-18-403(1), MCA.

12

revocation in DC 18-321 following the March 26, 2021 hearing states that prior conditions "remain unchanged and are *imposed*." (Emphasis added.) The State concedes that the second written order of revocation in DC 18-321 erroneously conflicts with the corresponding oral pronouncement to the extent that it appears to "impose[]," rather than merely "recommend[]," Conditions 1-22 and 24-27. It is therefore remanded to the District Court for corrections to be made accordingly.

¶21 The State disputes, however, Sullivan's contention that the written revocation order in DC 19-829 erroneously conflicts with the corresponding oral pronouncement.[8] The written revocation order in DC 19-829, like the second revocation order in DC 18-321, states that preexisting conditions "are imposed." However, the State contends that in the case of DC 19-829, the District Court did orally pronounce all conditions as imposed, rather than merely recommended. As noted above, the District Court orally pronounced that the sentence was "the exact same" as that imposed on October 1, 2020. However, the State argues that the October 1, 2020 oral pronouncement never expressly stated that conditions for DC 19-829 (unlike for DC 18-321) would be designated as recommendations, rather than requirements.

¶22 While the District Court's October 1, 2020 pronouncement never explicitly stated whether DC 19-829, specifically, would have conditions as recommendations or requirements, it did state that:

---

[8] Sullivan also raises this issue in a separate, though related, appeal before this Court in DA 20-0589. For purposes of continuity, we address the issue in this Opinion, rather than in the parallel appeal.

[Sullivan] will receive credit for time served on this particular matter beginning at the time of his arrest in DC 19-829. The conditions set forth in that presentence investigation report are the conditions that will be recommended to the Montana State Prison and to probation and parole once he's on parole and on the suspended ten years in DC 18-321.

¶23 Upon reviewing the record, we conclude that the intent of the District Court's October 1, 2020 oral pronouncement on DC 19-829—incorporated through the March 26, 2021 oral pronouncement on revocation of that DC 19-829 sentence—was, just as for DC 18-321, to provide Conditions 1-22 and 24-27 as recommendations to the DOC, while imposing Condition 23 as a requirement as part of the sentence. Thus, to the extent that the resulting written order of revocation on DC 19-829 ostensibly "imposed," rather than recommended, Conditions 1-22 and 24-27, it conflicts with the oral disposition and is remanded to the District Court to be corrected accordingly.

¶24 We therefore affirm in part, reverse in part, and remand. Upon remand, the District Court is instructed to:

- Amend the second revocation judgment in DC 18-321 to: (1) incorporate Sullivan's credit for time served from March 5, 2018, to December 8, 2018, and August 1, 2019, to March 26, 2021, and (2) restate Conditions 1-22 and 24-27 as recommendations.

- Amend the revocation judgment in DC 19-829 to: (1) incorporate time served from August 1, 2019, through March 26, 2021, and (2) restate Conditions 1-22 and 24-27 as recommendations.

¶25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

14

¶26 Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this Opinion.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE